VALLEY MECHANICAL
CONTRACTORS, INC.,
Appellant,

v.

Ernesto GONZALES, Appellee.

No. 13–93–139–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 16, 1995.

David Kithcart, Johnson & Davis, Harlingen, Larry Warner, Brownsville, for appellant.

Ernesto Gonzales, Harlingen, for appellee.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Justice.

This is an appeal from a garnishment judgment rendered in favor of appellee. Appellant raises two points of error: a "no evidence" complaint and a factual insufficiency of the evidence complaint. We affirm.

In 1988, appellee, Ernesto Gonzales, a practicing attorney, represented Isidora Wabler in a divorce proceeding. Pursuant to the divorce judgment, the court ordered Isidora's ex-husband, David Wabler, to pay Gonzales $13,075 in attorney's fees plus ten percent per annum interest until the debt is paid.

In 1991, David Wabler formed a corporation—Valley Mechanical Contractors, Inc. (VMC)—a commercial air conditioning business. Wabler opened two bank accounts in the name of VMC at the San Benito Bank and Trust Company and was the only individual authorized to write checks on the VMC accounts.

As of 1993, Wabler had not satisfied the 1988 judgment against him, owing Gonzales a total of $18,596.00 including interest. . Gonzales applied for a writ of garnishment against the San Benito Bank to satisfy his judgment against Wabler out of the funds in the VMC account. Gonzales alleged in his writ application that VMC was the alter ego of Wabler.

The trial court heard testimony and evidence at the garnishment hearing and granted judgment in favor of Gonzales, thereby

ordering Gonzales to recover against the San Benito Bank the sum of $18,596.00 to be credited to the 1988 judgment against Wabler. The trial court recited in its judgment that it found VMC to be the alter ego of Wabler and Wabler the owner of VMC.

■ VMC now appeals the trial court's garnishment judgment, raising two points of error: (1) there is no evidence to support the trial court's finding that VMC was the alter ego of Wabler, and (2) there is insufficient evidence to support the trial court's finding that VMC was the alter ego of Wabler. By these points, appellant infers that the trial court actually made findings of fact and conclusions of law on the alter ego issue. However, in reviewing the record before us, we find it to be devoid of any findings of facts and conclusions of law. Although the court recites in its judgment that it found VMC to be the alter ego of Wabler, we do not treat this recitation as valid findings of fact. Rather, findings of fact are filed as a document or documents separate and apart from the judgment. TEX.R.CIV.P. 299a.

■ The transcript reflects that appellant filed a request for findings of fact approximately sixty days after the judgment was signed. As such, appellant did not make a timely request. *See* TEX.R.CIV.P. 296 (mandating that requests for findings shall be filed within twenty days after judgment is signed). Because VMC did not make a timely request, we will treat this record as one where findings of fact were neither requested nor filed. *See Lute Riley Motor, Inc. v. T.C. Crist, Inc.,* 767 S.W.2d 439, 440 (Tex.App.— Dallas 1988, writ denied).

■ In a nonjury trial, where findings of fact and conclusions of law were neither requested nor filed, it will be implied that the trial court made all necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992); *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex. 1980). If the evidence supports the implied findings, we must uphold the judgment of the trial court on any theory of law applicable to the case. *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984); *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977).

■ When, as in this case, a statement of facts is brought forward, these implied findings may be challenged by factual or legal sufficiency points in the same manner as jury findings or a trial court's findings are challenged. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *Burnett,* 610 S.W.2d at 736. The applicable standard of review remains the same. *See Heine,* 835 S.W.2d at 83–84; *Burnett,* 610 S.W.2d at 736. Here, appellant contends the evidence is legally and factually insufficient to support the finding that VMC was the alter ego of Wabler. Before resolving these evidentiary points, however, we find it necessary to review the doctrine of alter ego and the applicable substantive law.

■ Texas courts will disregard the corporate fiction—pierce the corporate veil— when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986). Specifically, courts will disregard the corporate fiction:

(1) when the fiction is used as a means of perpetrating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.* at 272. The third circumstance—where the corporate fiction is used as a means to evade an existing legal obligation—is implicated in this case.

■ Alter ego is one basis in law for disregarding the corporate fiction when there is such unity between a corporation and an individual that an adherence to the fiction of a separate existence would, under the particular circumstances, sanction a fraud or promote an injustice. *Id.; First Nat'l Bank v.*

*Gamble,* 134 Tex. 112, 132 S.W.2d 100, 103 (1939). Alter ego may be shown from the total dealings of the corporation and individual, including: (i) the degree to which corporate formalities have been followed and corporate and individual property have been kept separately; (ii) the amount of financial interest, ownership, and control the individual maintains over the corporation; and (iii) whether the corporation has been used for personal purposes. *Castleberry,* 721 S.W.2d at 272. The rationale behind the alter ego doctrine is that "if the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate creditors." *Id.* (quoting Ballantine, *Corporations* § 123 at 294 (1946)).

Texas case law is replete with scenarios where courts have disregarded the corporate fiction and applied the alter ego doctrine as a means to impose personal liability on a shareholder or a corporate officer for corporate obligations. *See generally Castleberry,* 721 S.W.2d at 270 (citing numerous cases). This case before us presents a slightly different twist in the traditional application of the alter ego theory in that, here, the trial court was asked to disregard the corporate fiction and, under the alter ego theory, look to the corporation to satisfy a corporate officer's personal obligation. Similar to the application here, courts of appeals have applied the alter ego theory in divorce actions, where they considered whether a corporation was the alter ego of a spouse for the purpose of determining whether assets held in the corporation's name should be treated as community property. *See Vallone v. Vallone,* 618 S.W.2d 820, 824 (Tex.App.—Houston [1st Dist.] 1981), *rev'd on other grounds,* 644 S.W.2d 455, 458 (Tex.1983) (holding that corporation was not alter ego of spouse); *Zisblatt v. Zisblatt,* 693 S.W.2d 944 (Tex.App.—Fort Worth 1985, writ dism'd) (holding that corporation was alter ego of spouse and "clearly a fraud on the rights of the community").

■ In considering the alter ego doctrine as it applies to this case, we turn our attention to the record before us. As reflected in the statement of facts, the pertinent evidence submitted at the garnishment hearing includes Wabler's testimony and VMC's corporate documents. The evidence shows, when Wabler formed the VMC corporation in 1991, he had an existing three year-old judgment against him. Wabler paid the $500.00 incorporation fee out of his own pocket, held the office of president of VMC, and designated himself as an employee of VMC. Wabler's brother, Raymond, who lived in Ohio, was assigned the status of sole shareholder. The minutes of the first corporate meeting indicate Raymond conveyed a bill of sale for personal property in excess of $1000.00 to VMC, in compliance with the law requiring $1000 in value to be injected into the corporation before commencing business. The minutes further reflect that upon receipt of the bill of sale, the corporation issued Raymond a share certificate in the amount of 1000 shares. However, Wabler admitted that Raymond never paid money nor conveyed personal property or anything of value to VMC in exchange for his shareholder status. Likewise, VMC never sent money, a bonus, nor the like to Raymond.

VMC had two bank accounts. The signature cards on each reflected that Wabler was the only person authorized to sign corporation checks. This remained so, even after Wabler resigned as president and, according to the minutes, authorized Raymond—as sole shareholder—to operate the business. The certificate of title to the vehicle that Wabler used for business read, "David Wabler d/b/a V.M.C."

As an employee of VMC, Wabler received a monthly salary of $1150.00, which he testified was his only source of income; however, his monthly personal living expenses totalled approximately $1600.00. On at least two occasions, Wabler wrote checks from VMC to himself in the amounts of $2500.00 and $608.97. Wabler also deposited numerous funds into his personal account, which far exceeded his salary. Particularly, from May 1991 until December 1991, Wabler deposited $16,762.14 in his personal account, while his 1991 W–2 form from VMC showed earnings of only $2450.00. Furthermore, VMC corporation paid Wabler's home telephone bill.

We now consider VMC's legal and factual sufficiency of the evidence points of error. As mandated by the Texas Supreme Court, we will address VMC's legal sufficiency point first before considering its factual sufficiency point. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981). By VMC's first point of error, VMC alleges there is no evidence to support the finding that VMC was the alter ego of Wabler. In determining a legal sufficiency question or a "no evidence" question, a court must consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Heine*, 835 S.W.2d at 84; *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985). If there is more than a scintilla of evidence to support the finding, the "no evidence" challenge fails. *Heine*, 835 S.W.2d at 84; *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). Evidence is no "more than a scintilla" if it is offered to prove a vital fact, but is so weak as to do no more than create a mere surmise or suspicion of the existence of that vital fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970).

In applying this standard to our review of the evidence, we draw the following inferences, which tend to support the trial court's finding: (i) Wabler created the corporation as a means to avoid his existing legal obligation—his debt, and (ii) as indicated by the total dealings between Wabler and VMC, Wabler maintained sole ownership and control over VMC. After considering these inferences, which tend to support the trial court's finding and disregarding all evidence and inferences to the contrary, we find there was more than a scintilla of evidence to support the trial court's finding that VMC was the alter ego of Wabler. We overrule VMC's first point of error.

By VMC's second point of error, VMC alleges there is factually insufficient evidence to support the finding that VMC was the alter ego of Wabler. In determining a factual sufficiency question, we must consider and weigh all the evidence, including any evidence contrary to the court's judgment. *Burnett*, 610 S.W.2d at 736; *In re*

*King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1952).

In considering and weighing all the evidence and testimony presented at the hearing, we find that VMC did not submit evidence controverting Gonzales's claim of corporate informalities nor did it submit evidence showing legitimate reasons for organizing VMC. Thus, the entirety of the evidence supports the trial court's implied finding and judgment that VMC was the alter ego of Wabler. We overrule VMC's second point.

Accordingly, we AFFIRM the judgment of the trial court.