**Gumaro De La Cruz SALINAS and Anna Elva Salinas, Appellants,**

v.

**Joan Rebecca BEAUDRIE, Appellee.**

No. 13–96–473–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 11, 1997.

Before SEERDEN, C.J., and CHAVEZ and RODRIGUEZ, JJ.

## OPINION

CHAVEZ, Justice.

Appellants seek the reversal of a judgment entered against them on their claims against appellee. We affirm.

### Factual background

Appellee is the developer of the Ranchito La Homa ("La Homa") subdivision, located in Hidalgo County, Texas. The record reflects that La Homa also lies within the extraterritorial jurisdiction of the City of Mission, Texas. On May 3, 1993, appellants, who are married, contracted with appellee to purchase five acres of unimproved land, consisting of Lot 5 of La Homa (a one-acre tract), and four adjacent acres which had not been subdivided according to local regulations.[1] The record also indicates that appellants are not entirely fluent in the English language.

Two separate contracts for deed were executed by appellants and appellee—one contract embracing Lot 5 and the other embracing the four-acre tract. The payment-related terms of the contracts for deed are as follows:

**Four-acre tract**

| | |
|---|---|
| Date of contract for deed: | May 3, 1993 |
| Sale price: | $16,000 |
| Down payment: | $ 4,850 |
| Deferred principal: | $11,150 |
| Interest on deferred principal: | 0% |
| Payment terms: | "The entire Deferred Principal Amount is due on or before May 3, 1994." |

**Lot 5**

| | |
|---|---|
| Date of contract for deed: | May 3, 1993 |
| Sale price: | $12,500 |
| Down payment: | "$2,000 cash, plus $3,000 for transfer of 1984 Mercury automobile"[2] |
| Deferred principal: | $ 7,500 |
| Interest on deferred principal: | 10% annually |
| Payment terms: | monthly installments of $150 |

The record indicates that two separate contracts were executed to accommodate appellants' desire for differing payment terms as between Lot 5 and the four-acre tract.

Richard Alamia, Edinburg, for appellants.

Sidney R. Meadows, McAllen, for appellee.

1. We shall refer to the one-acre tract in La Homa as "Lot 5" and the remaining acreage as the "four-acre tract."

2. The record indicates that appellants never delivered legal title to the automobile to appellee.

The contract on the four-acre tract provides as follows: "Buyer acknowledges that the subject property has not been subdivided. Buyer agrees to be responsible for complying with applicable subdivision regulations of the government entity having jurisdiction over the property." Both contracts also contain, *inter alia,* the following terms: (1) upon default by the buyers (appellants), the seller (appellee) may recover its costs of collection; (2) upon default by the buyers, the seller may "cancel this contract, declare all of Buyer[s'] interest ... forfeited, and retain as liquidated damages all money paid by Buyer[s] to Seller under this contract ..."; (3) that "Buyer[s] ha[ve] examined the property to Buyer[s'] complete satisfaction and know[ ] its condition"; and (4) that "[n]o delay by Seller in enforcing any part of this contract shall be deemed a waiver of any of Seller's rights or remedies." Although testimony received at trial was conflicting as to precisely who orally translated the contracts into Spanish for appellants, the record does indicate that some one—either appellee's attorney's legal assistant, or Anna Salinas's nephew—translated the documents for appellants.[3]

Appellants proceeded to construct improvements on Lot 5. However, the record indicates that they were denied a building permit for the four-acre tract by the City of Mission, because it was not subdivided acreage. In any event, appellants were considered by appellee to be in default as to the payment terms of both contracts for deed by July 27, 1994.

On July 27, 1994, appellee's attorney sent notices of default to appellants. The notice regarding Lot 5 provided that appellants owed, as of the date of the letter, $300, stating that "unless you make the payments by October 27, 1994, the seller has the right to take possession of your home and to keep all payments you have made to date." The notice regarding the four-acre tract provided that appellants owed, as of the date of the letter, $5,000, stating that "unless you make the payments by August 8, 1994, the seller has the right to take possession of your home and to keep all payments you have made to date."

Nothing in the record indicates that appellants disputed the amount of the debt, although they were advised of their right to dispute in the notices of default. Further, nothing indicates that appellants proceeded to tender payment to appellee. However, Anna Salinas testified at trial that she and her husband were unable to locate appellee at the contractually-designated place of repayment. On August 26, 1994, appellee's attorney forwarded notices of cancellation to appellants, canceling the contract for deed as to the four-acre tract.

Appellants filed their original petition against appellee in the underlying cause on October 24, 1994, setting forth claims under Chapter 17, Subchapter E, of the Texas Business and Commerce Code. The record indicates that, on December 6, 1994, appellants tendered $300 to appellee; the payment was explicitly earmarked by appellants for Lot 5. The foregoing is the only post-default payment evidenced in the record. On June 19, 1995, appellee filed a counterclaim, seeking cancellation of the contracts for deed, attorney's fees, and the issuance of a writ of possession.

Appellee's attorney forwarded a cancellation notice regarding the contract for deed on Lot 5 to appellants on May 1, 1996. On May 2, 1996, appellants filed their first amended petition, which was the live petition at trial, raising the same material claims set forth in their original petition, and also seeking that appellants "be ordered to meet all Hidalgo County Subdivision Ordinance requirements."[4] The bench trial commenced on May 14, 1996.

The judgment was signed on May 29, 1996. The judgment contains sixteen findings. In addition, appellants were ordered to take nothing on their claims against appellee, and appellee was awarded cancellation of the contracts for deed, attorney's fees, costs, and possession of Lot 5 and the four-acre tract.

---

**3.** Gumaro Salinas did not testify at trial, and the record indicates that he was incarcerated at the time of trial.

**4.** We interpret this as a prayer for affirmative injunction.

Appellants filed their requests for findings of fact and conclusions of law on June 4, 1996. The record does not contain the trial court's findings and conclusions, if any, nor does it contain a notice of past-due findings and conclusions. This appeal ensued in eleven points of error.

### Findings and conclusions

■ The second, third, fourth, fifth and eleventh points of error complain of the trial court's findings which are contained in the body of the judgment. However, such findings do not belong in the judgment. Tex.R. Civ. P. 299a; *see also Valley Mechanical Contractors, Inc. v. Gonzales*, 894 S.W.2d 832, 834 (Tex.App.—Corpus Christi 1995, no writ) (stating that findings of fact are to be filed as a document or documents separate and apart from the judgment); *R.S. v. B.J.J.*, 883 S.W.2d 711, 720 (Tex.App.—Dallas 1994, no writ) ("The parents appear to challenge 'findings' contained in the body of the judgment. Such findings are inappropriate and may not be considered on appeal."). Therefore, we cannot consider the trial court's findings that are contained within the body of the judgment.[5] The second, third, fourth, fifth and eleventh points of error are overruled.

■ In their ninth point of error, appellants contend that the trial court "erred in *not findings* [sic] that there was no meeting of the minds on the Contract for Deed.... [Emphasis added.]" Although appellants requested findings of fact and conclusions of law, no findings and conclusions—aside from the findings recited in the judgment—appear in the record; further, the record does not

show that appellants have complied with Texas Rule of Civil Procedure 297 by filing and serving a "Notice of Past Due Findings of Fact and Conclusions of Law." *See* Tex.R. Civ. P. 297. Appellants' failure to file this reminder waived their right to complain on appeal of any error related to the trial court's failure to make a finding or conclusion. *See Pierson v. GFH Financial Services Corp.*, 829 S.W.2d 311, 314 (Tex.App.—Austin 1992, no writ) (citing *Las Vegas Pecan & Cattle Co., Inc. v. Zavala County*, 682 S.W.2d 254, 255 (Tex.1984)). The ninth point of error is overruled.

### Declaratory relief

The remaining points of error—points one, six, seven, eight and ten—relate to the trial court's failure to make various declarations. We note that appellant's "First Amended Original Petition" (the live petition at trial) does not seek relief pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. This discrepancy, standing alone, would permit our refusal to consider the points of error. *See* Tex.R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings[.]"). However, because appellants prayed for general relief, and in furtherance of justice, we consider the merits of these points of error.

### Merger of contracts

■ The first point of error contends that the trial court "erred in failing to declare that there were two separate Contract [sic] of [sic] Deeds [sic] to sale [sic] two different parcels of land and that there was no merger of contracts." This point bears on appel-

---

5. We realize that the correct application of Texas Rule of Civil Procedure 299a has been the subject of recent debate. *See Kondos Entertainment, Inc., Jay Snyder v. Quinney Electric, Inc.*, 948 S.W.2d 820, 825–27 (Tex.App.—San Antonio 1997, n.w.h.) (Duncan, J., dissenting). In fact, the concurrence purports to deviate from our prior statements in *Valley Mechanical Contractors, Inc. v. Gonzales*, 894 S.W.2d 832, 834 (Tex. App.—Corpus Christi 1995, no writ) (Seerden, C.J.), in favor of the "better reasoned" view espoused in *McElwee v. McElwee*, 911 S.W.2d 182, 190 n. 6, (Tex.App.—Houston [1st Dist.] 1995 writ denied). However, *McElwee* stated that rule 299a simply did not apply because the alleged findings complained of were in fact con-

clusions of law properly filed under the heading of "conclusions of law." 911 S.W.2d at 190. We are not free to reformulate the law on a case-by-case basis. Nevertheless, although not required to, we have examined the findings recited in the trial court's judgment and we determine them to be supported by the evidence in the record. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). Further, having weighed all of the evidence in the record, we determine that such findings are not so against the great weight and preponderance of the evidence as to be unjust. *See Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973) (citing *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951)).

lants' subsequent arguments regarding the validity of the contractual clause related to the four-acre tract, wherein appellants agreed to be responsible for compliance with local subdivision regulations. Evidence in the record suggests that, were the underlying contracts to be deemed a singular conveyance of five acres, the complained-of provision would be valid, whereas, were the transaction to be regarded as two separate conveyances (one for Lot 5 and another for the four-acre tract), the provision may have been void *ab initio* as illegal, pursuant to local regulations and/or Texas statutes.

■ Merger, with respect to the law of contracts, is the extinguishment of one contract by its absorption into another contract, and is largely a matter of intention of the parties. *See generally Whiddon v. General Mills, Inc.*, 347 S.W.2d 7, 10 (Tex.Civ.App.—Fort Worth 1961, no writ). However, no merger exists if some subsequent writing does not relate to or include the subject matter of a prior oral agreement. *See id.* The instant facts do not present a merger question because (1) the contracts in issue were both *written*, and were executed contemporaneously, and thus one could not have been executed prior or subsequent to the other, and (2) the contracts describe different parcels of real property, and therefore the contracts do not relate to or include the same subject matter. *See generally* 3 FRED A. LANGE & ALOYSIUS A. LEOPOLD, TEXAS PRACTICE: LAND TITLES AND TITLE EXAMINATION § 354 (1992). Having determined that the doctrine of merger does not apply to the instant facts, we overrule the first point of error.

### Subdivision regulations

■ The sixth point of error contends that the trial court "erred in failing to declare that Defendant [appellee] failed to meet the Hidalgo County Subdivision Ordinance Requirements, thus breaching the contract." By our resolution of the first point of error, we determined the legal doctrine of merger is inapplicable to invalidate the contractual provision by which appellants agreed to be responsible for complying with local subdivision regulations *vis-a-vis* the four-acre tract.

We therefore consider whether it was possible, based on the evidence in the record, for appellants to have complied with the contract for deed as to the four-acre tract.

The record contains a copy of the 1987 version of the Hidalgo County Subdivision Regulations ("1987 regulations"), which the record indicates were effective on the date of contract execution, and the 1995 amendment and restatement of the Hidalgo County Subdivision Regulations ("1995 regulations"), which were apparently effective at the time of trial.

Section 4 of the 1987 regulations requires a "subdivider" to fully comply with said regulations. HIDALGO COUNTY, TEX., SUBDIVISION REGULATIONS § 4 (1987). We therefore inquire whether appellants could have been subdividers under the 1987 regulations. The 1987 regulations define a subdivider as "[a]ny person who divides or proposes to divide a tract of land into a Subdivision." HIDALGO COUNTY, TEX., SUBDIVISION REGULATIONS § 3(25) (1987). Based on the record, nothing would have prohibited appellants, on the date of contract execution, from being able to comply with the 1987 regulations, pursuant to the terms of the contract for deed.

The 1995 regulations require a subdivider to "fully compl[y] with the requirements and conditions of these Subdivision Regulations." HIDALGO COUNTY, TEX., SUBDIVISION REGULATIONS § 4.1 (1995). The 1995 regulations define a subdivider as "[a]ny person who owns or controls any interest in land and who directly or indirectly divides or proposes to divide a tract of land into a Subdivision[.]" HIDALGO COUNTY, TEX., SUBDIVISION REGULATIONS § 3.39 (1995). Assuming, *arguendo,* that appellants were not in default of the contract for deed, they owned or controlled an interest in the four-acre tract. *See Salvador Bochas, Martina Loredo v. State,* 951 S.W.2d 64, 71–72 (Tex.App.—Corpus Christi 1997, n.w.h.) (noting that a valid contract of sale effects a change of ownership); *Bucher v. Employers Cas. Co.,* 409 S.W.2d 583, 585 (Tex.Civ.App.—Fort Worth 1966, no writ) ("It is clear . . . that the legal effect to be given to a long term contract of sale is essentially the same as that to be given to a deed with retained vendor's lien, and the

rights and obligations of the parties are substantially the same."); *see also* 92 C.J.S. *Vendor & Purchaser* § 556 (1955). Accordingly, nothing in the record suggests appellants' inability to comply with the 1995 regulations.

In light of the foregoing, we determine that compliance with subdivision regulations was validly devolved upon appellants, and that the district court did not err in failing to declare that appellee violated local subdivision regulations. The sixth point of error is overruled.

*Spanish language requirement*

■ The seventh point of error contends that the trial court "erred in failing to declare that the Contract [sic] of [sic] Deed were not in the Spanish language as required by law." Appellants direct our attention to section 5.093 of the Texas Property Code, which provides as follows: "If the negotiations that precede the execution of an executory contract are conducted primarily in Spanish, the seller shall provide a copy in Spanish of all written documents relating to the transaction, including the contract...." TEX. PROP.CODE. ANN. § 5.093 (Vernon Supp. 1997).

Appellants' reliance on section 5.093 of the Texas Property Code is misplaced, as this statutory provision did not become effective until September 1, 1995—more than two years after the date of execution for the contracts underlying the instant case. *See* Act of June 17, 1995, 74th Leg., R.S., ch. 994, §§ 3,6, 1995 Tex. Gen. Laws 4982, 4984, 4989 (current version at TEX. PROP.CODE ANN. § 5.093 (Vernon Supp.1997)). We note that a statute is presumed to be prospective in its operation unless expressly made retrospective. *See* TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988) ("Prospective Operation of Statutes"). In the present case, nothing in the record even attempts to surmount the presumption of prospective operation *vis-a-vis* section 5.093 of the Texas Property Code; accordingly, section 5.093 does not apply to the facts of the instant case. The seventh point of error is overruled.

*Title transfer*

■ Appellants contend in their eighth point of error that the trial court "erred in failing to declare that the Defendant [appellee] failed to provide a recorded legal title of property covered by both Contract [sic] for Deed...." Appellants direct our attention to section 5.102 of the Texas Property Code, which provides as follows: "The seller shall transfer recorded, legal title of the property covered by the executory contract to the purchaser not later than the 30th day after the date the seller receives the purchaser's final payment due under the contract." TEX. PROP.CODE ANN. § 5.102(a) (Vernon Supp. 1997).

In response, appellee argues that section 5.102 does not apply to the instant case, as that statute did not become effective until after the date of execution of the contracts for deed. *See* Act of June 17, 1995, 74th Leg., R.S., ch. 994, §§ 3,6, 1995 Tex. Gen. Laws 4982, 4988–89 (current version at TEX. PROP.CODE. ANN. § 5.102 (Vernon Supp. 1997)). We disagree with appellee. As noted above, a statute is presumed to be prospective in its operation unless expressly made retrospective. *See* TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988) ("Prospective Operation of Statutes"). Nothing in the record in the present case begins to surmount the presumption of prospective operation *vis-a-vis* section 5.102(a) of the Texas Property Code; accordingly, section 5.102(a) applies to the facts of the instant case, as it is applicable to situations wherein the final contract payment occurs after September 1, 1995.

Nevertheless, although section 5.102(a) of the Texas Property Code is relevant to the facts of this case, it is not dispositive. Appellant Anna Salinas testified at trial that she and her husband were in arrears as to both contracts for deed. Because the final payments under the contracts were never tendered, appellee was under no duty to deliver recorded, legal titles to appellants. *See* TEX. PROP.CODE. ANN. § 5.102(a) (Vernon Supp. 1997). The eighth point of error is overruled.

*Duty to read contract*

The tenth point of error contends that the trial court "erred in failing to declare that Plaintiffs [appellants] were misled by Defendants [sic] [appellee] and relied on their [sic] promise to their detriment thus breached [sic] the contract." Appellants' argument is that (1) they do not read or speak English, and (2) their failure to read the contracts they signed should be excused on the basis of their language difficulties.

We note that parties to an arms-length transaction are charged with a duty to read what they sign, and the failure to do so constitutes negligence. *Plains Cotton Co-op. Ass'n v. Wolf,* 553 S.W.2d 800, 803 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e). Further, the law presumes that a written agreement correctly embodies the parties' intentions, and is an accurate expression of the agreement the parties reached in prior oral negotiations. *Farina v. Calvary Hill Cemetery,* 566 S.W.2d 650, 652 (Tex.Civ.App.— Texarkana 1978, writ ref'd n.r.e.).

There is, however, an exception to the above stated rule. *Plains Cotton Co-op. Ass'n,* 553 S.W.2d at 803. Where one party's false representations induce another party to contract, negligence of the second party cannot be raised to bar relief to him. *Id.* Thus, failure to read a contract before signing it, although it may constitute negligence, will not bar equitable relief to one who has executed a contract in reliance upon false representations made to him by the other contracting party. *Id.* This rule applies to innocent as well as intentional misrepresentations. *Id.*

The record does not contain any evidence that the contracts for deed in the instant case were not bargained for at arms-length. The fact that appellants may not be fluent in English did not of itself create such a confidential relationship as to relieve them from their duty to read the contract documents. There is no evidence of active trickery or deceit in the record. Evidence in the record demonstrates that the contracts for deed were translated for the benefit of appellants, at the closing in the office of appellee's attorney, by appellee's attorney's legal assistant

and/or Anna Salinas's nephew. In fact, appellee's attorney testified that the closing consumed approximately three to four hours, due to the careful explanations provided to appellants. We determine that appellants should not be relieved of their duty to have read what they signed. The tenth point of error is overruled.

The judgment of the trial court is AFFIRMED.

SEERDEN, C.J., concurring.

SEERDEN, Chief Justice, concurring.

I concur with the result of this case and with the reasoning of the majority opinion, except for the majority's statement that we cannot consider the trial court's findings contained within the body of the judgment.

I would hold that we may consider findings within the body of the judgment, even if those findings are not in compliance with Texas Rule of Civil Procedure 299a, so long as they are not in conflict with separately-filed findings that are in compliance with the rules. Specifically, Rule 299a states:

> Findings of fact shall not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes. Findings of fact shall be filed with the clerk of the court as a document or documents separate and apart from the judgment.

Rule 299a is not entirely silent on the effect of findings included in a judgment, but provides only that such findings are invalid in case of conflict with properly–filed findings. If findings incorrectly included in the judgment were to be treated as a nullity, Rule 299a could easily have stated that. It does not. Moreover, if the implied intent of Rule 299a was to nullify such findings entirely, then the provision for resolving conflicts between the "null" findings in the judgment and properly–filed findings would be meaningless. Accordingly, a fair reading of the rule implies that non–conflicting findings in the judgment are entitled to be given effect.

It is true that several courts, including our own, have under Rule 299a refused to treat recitations in the judgment as valid findings of fact, even in the absence of any separately-filed findings. *Valley Mechanical Contractors, Inc. v. Gonzales*, 894 S.W.2d 832, 834 (Tex.App.—Corpus Christi 1995, no writ); R.S. v. B.J.J., 883 S.W.2d 711, 715–16 (Tex.App.—Dallas 1994, no writ) ("Such findings [in the body of the judgment] are inappropriate and may not be considered on appeal."); *Boland v. Natural Gas Pipeline Co.*, 816 S.W.2d 843, 844 (Tex.App.—Fort Worth 1991, no writ); *Sutherland v. Cobern*, 843 S.W.2d 127, 131 n.7 (Tex.App.—Texarkana 1992, writ denied).

However, I believe that a better reasoned approach has been taken by the court in *McElwee v. McElwee*, 911 S.W.2d 182, 190 n.6 (Tex.App.—Houston [1st. Dist.] 1995, writ denied), which refused to apply Rule 299a to bar the effect of findings included in the judgment when there were no properly-filed conflicting findings. *See also Kondos Entertainment, Inc. v. Quinney Electric, Inc.*, 948 S.W.2d 820, 825 (Tex.App.—San Antonio 1997, n.w.h.) (Duncan, J., Dissenting). In *Kondos*, Justice Duncan presents a reasoned and persuasive historical argument for construing Rule 299a to recognize and give effect to findings contained in a judgment absent a conflict.

Finally, I conclude that there is no logical reason to deny effect to findings included in a judgment. I concede that there are good reasons for requiring that findings be filed separately from the judgment and for ignoring recitations in the judgment which conflict with those separately-filed findings. This requirement distinguishes the true findings on which the trial court relied in rendering judgment from merely incidental factual references that the judge may have included in the judgment or extraneous details that merely explain the background of the case and on which the trial court never intended to be bound. Accordingly, separately-filed findings provide a more precise and certain basis for the support or attack of the judgment on appeal. However, when the factual recitations in the judgment are the only indication of the judge's reasoning, there is no reason to disregard clearly articulated findings merely because they were incorrectly included in the judgment.