NUMBER 13-02-554-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

MINNESOTA LIFE INSURANCE 
COMPANY,
                                                                                                     Appellant,

v.

ELIA L. VASQUEZ, 
                                                                                                     Appellee.
                                                                                                                                      

On appeal from the County Court at Law 
No. 4 of Nueces County, Texas.                                                                                                                      

O P I N I O N

Before Justices Yañez, Castillo and Garza
Opinion by Justice Garza
 
Appellee, Elia Vasquez (“Vasquez”), successfully sued appellant, Minnesota Life
Insurance Company (“Minnesota Life”), for knowing violations of the Texas Insurance
Code


 and for mental anguish. Appellee alleged that Minnesota Life unreasonably delayed
payment on the proceeds of an accidental death policy that insured the life of her
deceased husband. Minnesota Life contended that the cause of death was not clearly
accidental and the delay was caused by its need to obtain additional medical records. The
hospital from which the records were sought was unresponsive and did not turn over the
requested documents to Minnesota Life for five months. Upon receipt of these records,
Minnesota Life paid Vasquez’s claim. 
Minnesota Life tried unsuccessfully to remove the case to federal court under
diversity jurisdiction, but removal was denied based on the failure of the pleadings to meet
the amount in controversy requirement of $75,000. After a trial in the state court, the jury
found a knowing violation of the insurance code and that Vasquez had suffered mental
anguish. The jury awarded her $60,000 in mental anguish damages, $250,000 in actual
damages, and $37,000 in attorney’s fees. The trial court allowed a post-verdict
amendment of Vasquez’s pleadings to conform to the jury award and ultimately rendered
an award of $180,000 plus attorneys fees against Minnesota Life. 
Minnesota Life appeals to this Court, raising six issues: (1) legal and factual
insufficiency of the evidence to support a finding of mental anguish; (2) legal and factual
insufficiency of the evidence to support the amount of mental anguish damages found; (3)
the trial court erroneously admitted evidence of Vasquez’s diabetic condition; (4) the trial
court erroneously excluded evidence relating to Vasquez’s conduct; (5) the evidence was
legally and factually insufficient to support a finding of a knowing violation of the insurance
code; and (6) the trial court erroneously allowed a post-trial amendment of the pleading to
conform to the damages awarded. We affirm the judgment of the trial court. 
I. Mental Anguish
In its first issue, Minnesota Life contends that there was not legally and factually
sufficient evidence to support the jury’s finding that Vasquez suffered mental anguish. 
When legal and factual sufficiency issues are raised, this Court first considers the question
of legal sufficiency. Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981);
Valley Mechanical Contractors, Inc. v. Gonzales, 894 S.W.2d 832, 836 (Tex. App.–Corpus
Christi 1995, no writ). To review legal sufficiency, we must look only to the evidence and
inferences that tend to support the jury’s findings, disregarding all contrary evidence.
Balogh v. Ramos, 978 S.W.2d 696, 701 (Tex. App. – Corpus Christi 1998, pet. denied). 
If there is more than a scintilla of evidence in support of the finding, this Court may not
overturn the jury’s findings for legal insufficiency, regardless of the counter evidence
available. Valley Nissan v. Davila, No. 13-00-153-CV, 2003 Tex. App. LEXIS 7844, at *5
(Corpus Christi Sept. 4, 2003, no pet. h.).  
If the evidence is found legally sufficient, the factual sufficiency of the evidence is
then considered. For this review, this Court compiles all the evidence in the record and
then contrasts the evidence supporting and opposing the finding. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); Valley Mechanical, 894 S.W.2d at 836. We will defer to the
jury’s findings unless this review demonstrates that the findings are so against the great
weight and preponderance of the evidence as to be unjust and clearly erroneous. Id.           To support an award of mental anguish, a party must present either direct evidence
of the nature, duration, and severity of her mental anguish, thereby establishing a
substantial interruption in her daily routine, or circumstantial evidence of a high degree of
mental pain and distress that is greater in degree than mere worry, anxiety, vexation,
embarrassment, or anger. Parkway v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995); Valley
Nissan, 2003 Tex. App. LEXIS 7844 at *28 – *29. If a party’s pre-existing medical
condition deteriorates or is compounded because of the torts of another party, the worry
and pain associated with the aggravated condition can be considered mental anguish. 
Powell v. Underbrink, 499 S.W.2d 206, 210-11 (Tex. App.–San Antonio 1973, no writ); see
Southwest Tex. Coors v. Morales, 948 S.W.2d 948, 952-53 (Tex. App.–San Antonio 1997,
no pet.) (upholding mental anguish award based on new injury that aggravated existing
condition). Mental anguish can be established through testimony from the injured party
explaining how she felt and how her life was disrupted. Haggar Apparel Co. v. Leal, 100
S.W.3d 303, 314 (Tex. App.–Corpus Christi 2002, pet. filed) (plaintiff reported insomnia,
humiliation, and an inability to function and maintain a normal relationship with her family); 
Norwest Mortgage Co. v. Salinas, 999 S.W.2d 846, 862 (Tex. App.–Corpus Christi 1999,
pet. denied) (plaintiffs reported insomnia, feelings of physical pain, and an affect on their
work and family relationships). It is apparent from the record that the jury was presented with substantially more
than a scintilla of evidence tending to support a finding of mental anguish. Vasquez
testified that during the time Minnesota Life was delaying the payment of the accidental
death claim, she could not sleep due to the stress from the uncertainty of her financial
situation. She was worried about the effect of the delayed payment on the mortgage on
her home and felt that her “whole world” had caved in. Although her doctor had told her
not to return to work for at least another year because of her various health problems, she
was so concerned about the loss of her home that she began looking for work. Vasquez
is a diabetic, and she testified that during this waiting period, she experienced an increased
blood-sugar level that her doctor attributed to her stress levels. Her blood-sugar levels were
sufficiently altered to require a change in her medical regimen, from taking pills to having
daily insulin shots. This evidence alone more than satisfies the requirements of legal
sufficiency. See Valley Mechanical, 894 S.W.2d at 836; Powell, 499 S.W.2d at 210-11.
Having determined that the jury finding was supported by legally sufficient evidence,
we now turn to the factual sufficiency review and consider all the evidence relating to
Vasquez’s mental anguish. The evidence in support of the mental-anguish finding was
discussed above: Vasquez was extremely worried and under stress, which caused
sleeplessness and could have triggered or have been a contributing factor in her changed
diabetic condition. All evidence both in support of and in opposition to a finding must be
considered in a factual sufficiency review. Housing Auth. v. Massey, 878 S.W.2d 624, 627
(Tex. App.–Corpus Christi 1994, no writ). Here, however, there was little to no evidence
tending to disprove Vasquez’s mental anguish claim. Minnesota Life argues simply in its
brief that the degree of stress Vasquez experienced should have been greater in order to
justify the verdict and that Vasquez did not prove unequivocally that this particular source
of stress was the cause of her increased blood-sugar levels. However, Minnesota Life did
not dispute the fact that Vasquez was experiencing stress, insomnia and anxiety, and that
she did have increased blood-sugar levels. 
Generally, a trial court can allow testimony from a witness about a matter of which
she has personal knowledge. Tex. R. Evid. 602. This testimony must be both rationally
based on the perception of the witness and helpful to establish a clear understanding of
the facts at issue. Tex. R. Evid. 701. When there is a question concerning causation of
witness injuries, lay testimony from the injured witness can be used “in those cases in
which general experience and common sense will enable a layman to determine, with
reasonable probability, the causal relationship between the event and the condition.”
Morgan v. Compugraphic Corp., 675 S.W.2d 729, 733 (Tex. 1984); see Sisters of Charity
of the Incarnate Word v. Gobert, 992 S.W.2d 25, 30 (Tex. App. – Houston [1st Dist.] 1997,
no pet.); Fidelity & Guaranty Ins. Underwriters, Inc. v. Rochelle, 587 S.W.2d 493, 496 (Tex.
Civ. App. – Dallas 1979, writ ref’d n.r.e.). Lay testimony that establishes a sequence of
events which provides a strong, logically traceable connection between the event and the
condition is sufficient proof of causation. Morgan, 675 S.W.2d at 733. The lay witness
need not directly prove causation but can simply establish the events that link the cause
and effect; the trier of fact can then use its common sense and general experience to
conclude whether the wrongdoing did or did not cause the subsequent injury. Id. For
example, in Morgan, the plaintiff reported working near a typesetting machine which was
leaking chemical fumes and developing an adverse physical reaction to the fumes within
a few days of the exposure. Id. The Supreme Court found that her testimony established
“a sequence of events from which the trier of fact may properly infer, without the aid of
expert medical testimony, that the release of chemical fumes from the typesetting machine
caused [the plaintiff] to suffer injury.” Id.; see also Vista Chevrolet, Inc. v. Barron, 698
S.W.2d 435, 443 (Tex. App. – Corpus Christi 1985, no pet.) (“We believe that, by the use
of common sense and general experience, the jury could conclude that appellee’s acne,
anxiousness and other problems were the result of duress arising from the slander.”).          Here, Vasquez testified as to her personal experience with her blood-sugar, based
on her regular at-home monitoring and various medical regimens. She also testified that
her doctor told her, as part of her treatment and management of the disorder, to reduce
her stress levels. A hearsay objection to the admission of the doctor’s statements was
never made, so the statements by her doctor can be accorded probative value by this
Court. Tex. R. Evid. 802 (“Inadmissable hearsay admitted without objection shall not be
denied probative value merely because it is hearsay.”). Her medical records, which
corrobate her testimony, were also properly admitted into evidence. Vasquez never
explicitly stated a definite cause of her changed condition; rather, she described the
circumstances in which the change occurred. These circumstances included the delayed
claim payment but also included several additional sources of stress, such as her
husband’s recent death, that could also have triggered or contributed to the change. Thus,
it sufficed for Vasquez to testify that the delay was stressful, that several stressful things
were occurring simultaneously, and that her blood-sugar levels spiked, purportedly in
response to the stress, and that such changes necessitated a change in medication. The
jury was able to evaluate all this information and draw its own conclusions regarding cause
and effect. Morgan, 675 S.W.2d at 733; Gobert, 992 S.W.2d at 30. 
An inferential leap to determine causation falls within the proper purview of the jury.
See Whitehead v. Tobias, 7 S.W.3d 658, 663 (Tex. App. – Texarkana 1999, no pet.) (jury
is the proper party to determine the proximate cause of an accident); Gobert, 992 S.W.2d
at 30 (jury is competent from its own experience to determine causation without expert
testimony). The jury was not unreasonable in weighing all factors presented, including the
extreme worry, sleeplessness, and disruption to her established medical routine, and
determining that Vasquez was genuinely mentally anguished. See Haggar Apparel, 100
S.W.3d at 314; Salinas, 999 S.W.2d at 862. Thus, the factual sufficiency review is
satisfied, and the jury decision cannot be overturned.Minnesota Life relies heavily on Parkway to support its contention that Vasquez’s
testimony was inadequate to support a finding of mental anguish. See Parkway, 909
S.W.2d at 445. However, the facts in Parkway that justified vacating the mental-anguish
award are distinguishable from the facts here. In Parkway, there was no direct testimony
about the plaintiffs’ emotional state or its subsequent physical effects, other than a reported
“upset” or “disturbed” feeling. Id. at 445. The record was “devoid of direct evidence” of the
alleged mental anguish, and there was also “no circumstantial evidence other than the fact
of [the wrongdoing] itself.” Id. Here, there was evidence presented other than the fact of
the delay by the insurance company. Vasquez attested to episodes of sleeplessness and
worry and noted that the situation also may have led to her changed diabetic state.
Vasquez’s medical records, which were also introduced as evidence, supported the
testimony that her blood-sugar levels had increased during this time period. This was more
significant than the two plaintiffs’ general “upset” feeling in Parkway, and the record here
was not devoid of direct and circumstantial evidence in support of the award. We overrule
Minnesota Life’s first issue.
 
 
II. Amount of Mental Anguish
In its second issue, Minnesota Life contends that there was not legally and factually
sufficient evidence to support the amount of the jury award of damages for mental anguish. 
The standard of review for legal and factual sufficiency is described above. An appellate
court must defer to the discretion of the jury in considering the amount awarded for mental
anguish damages, as the jury is best suited to determine the extent of the compensable
mental anguish. Valley Nissan, 2003 Tex. App. LEXIS 7844 at *30. However, this
discretion is not unlimited, as this Court must find that the jury acted reasonably and
compensated the party in a fair and equitable way that is somehow related to the level of
anguish suffered. Saenz v. Fidelity, 925 S.W.2d 607, 614 (Tex. 1996); Valley Nissan, 2003
Tex. App. LEXIS 7844 at *31.
The jury found that Vasquez suffered damages in the amount of $60,000. As
determined above, Vasquez sufficiently conveyed her anguish at trial so as to satisfy the
jury that she had suffered a significant amount. Its resulting valuation of this amount, at
approximately one and one-half times the amount she was entitled to under the underlying
insurance policy, appears neither arbitrary nor unrelated to the source of this anguish. 
Saenz, 9256 S.W.2d at 614; see also C&D Robotics, Inc. v. Mann, 47 S.W.3d 194, 201
(Tex. App.–Texarkana 2001, no pet.); Dico Tire v. Cisneros, 953 S.W.2d 776, 792 (Tex.
App. – Corpus Christi 1997, pet. denied). Having reviewed in the previous section the facts
on which the jury based this award, we conclude that the jury was not unreasonable, and
we defer to its award of $60,000 for mental anguish damages. We overrule Minnesota
Life’s second issue. 
III. Admission of Evidence
By its third issue, Minnesota Life argues that the trial court abused its discretion
when it admitted evidence of Vasquez’s blood-sugar level, as no competent evidence
provided a causal link between the delayed claim payment and the blood-sugar levels. 
The admission or exclusion of evidence is committed to the discretion of the trial court. 
City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1994). A judge only abuses
this discretion if she makes an admissibility determination without regard for any guiding
rules or principles. Id. at 754.
As we concluded in the previous discussion about Vasquez’s mental anguish claim,
the trial court adhered to the rules of evidence and authority regarding the use of lay
witness testimony to establish causation when it allowed the inclusion of the blood sugar
evidence. See Tex. R. Evid. 602; Morgan, 675 S.W.2d at 733; Vista Chevrolet, 698
S.W.2d at 443. There was no abuse of discretion, and so we overrule Minnesota Life’s
third issue. 
IV. Exclusion of Evidence
In its fourth issue, Minnesota Life complains that the judge improperly excluded
evidence of Vasquez’s husband’s medical records. Counsel for Vasquez apparently also
attempted to retrieve the decedent’s hospital records that were at the root of the delay in
paying Vasquez’s benefits. Vasquez’s counsel got copies of these records two months
before Minnesota Life obtained its copy of the records. However, both Vasquez and her
attorney failed to alert Minnesota Life that she had copies of the records. Counsel for
Minnesota Life attempted to introduce testimony establishing these facts at trial, but the
trial court ruled that such testimony was inadmissible. 
Minnesota Life is specifically arguing on appeal that this evidence directly relates
to the mental-anguish claim, and claims that had Vasquez truly been suffering great
anxiety as she pled, she would have turned the records over to Minnesota Life
immediately. Instead, Minnesota Life alleges, she refused to take the one step that would
end her mental anguish, and such refusal tends to show that her concern over the delay
was not the type of intense anxiety sufficient to constitute mental anguish. Thus,
Minnesota Life argues, the evidence should have been admitted to disprove the mental-anguish claim. 
This specific argument, however, was not properly preserved for appeal, as
appellee’s brief correctly points out. To preserve an issue for appeal, the objecting party
must distinctly point out the objectionable matter and the specific grounds of the objection. 
Tex. R. Civ. P. 274; Tex. R. App. P. 33.1(a). Otherwise, the objection is waived. Tex. R.
App. P. 33.1(a). An objection at trial that is not the same as the objection urged on appeal
presents nothing for appellate review. Borden Inc. v. Guerra, 860 S.W.2d 515, 525 (Tex.
App. – Corpus Christi 1993, writ dism’d by agr.); Exxon Corp. v. Allsup, 808 S.W.2d 648,
655 (Tex. App. – Corpus Christi 1991, writ denied).  
Counsel for Minnesota Life objected to the exclusion of this testimony regarding
Vasquez’s conduct at trial but on different grounds than those argued on appeal. Counsel
clearly stated at trial that this testimony was to be used to defeat another element of the
suit, specifically, that Minnesota Life knowingly violated the insurance code by delaying
payment. The fact that it took almost as long for Vasquez herself to obtain her husband’s
medical records from the hospital as it did for the insurance company was to be used to
establish the good faith of Minnesota Life: “what I’m trying to show is that it was no more
unreasonable for us than it was for them.” Minnesota Life was attempting to use this
evidence to show that the company was indeed making reasonable efforts to get the
records from the hospital and that it was not engaged in any purposeful delay. At trial, the
insurance company attempted to shift the blame for the delay from itself to the hospital
records department. On appeal, however, Minnesota Life argues that the testimony should
have been admitted to demonstrate that Vasquez purposefully prolonged her own mental
anguish. 
These dueling grounds for objecting to the exclusion of the evidence relate to
entirely separate elements of the case. Also, no objection concerning evidence of the
plaintiff’s conduct was raised in Minnesota Life’s motion for judgment notwithstanding the
verdict, for new trial or for remittitur. Therefore, this objection was not properly preserved
at trial and argument is now waived because of the different grounds relied upon. We
overrule Minnesota Life’s fourth issue.
V. Knowing Violation of the Insurance Code
By its fifth issue, Minnesota Life contends that the evidence supporting the jury’s
finding of a knowing insurance code violation was legally and factually insufficient. In
determining whether the evidence is legally sufficient to support a finding of a knowing
insurance code violation, we resolve all conflicts in the evidence and draw all inferences
in favor of the jury’s findings. State Farm Fire & Casualty Co. v. Simmons, 963 S.W.2d 42,
44 (Tex. 1998). Considering only the evidence offered in support of the finding, it is clear
that more than the requisite scintilla of evidence exists. The jury heard testimony that
Minnesota Life had a policy of paying claims within ten days, that the company received
the requested proof-of-loss documents, which stated the cause of death to be accidental,
and that the company failed to pay the claim but instead delayed payment for another six
months. This alone provides sufficient evidence to satisfy the standard of legal sufficiency. 
See Simmons, 963 S.W.2d at 44-45. 
Turning to the claim of factual insufficiency, all evidence supporting and disputing
the finding must be considered, and the appellate court should only set aside the verdict
if the evidence is so weak or contrary to the verdict as to make the judgment wrong and
unjust. Cain, 709 S.W.2d at 176; Valley Mechanical, 894 S.W.2d at 836. As part of this
complaint, Minnesota Life contends that the jury was incorrectly instructed as to the
definition of a knowing violation of the Texas Insurance Code. The jury was instructed to
find that the company had engaged in an unfair or deceptive act or practice if it failed to
“attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim with
respect to which the insurer’s liability has become reasonably clear” or if it failed “within a
reasonable time (A) to affirm or deny coverage of a claim to a policyholder or (B) submit
a reservation of rights to a policyholder.” These instructions correspond to the statutory
language of the Texas Insurance Code article 21.21 sections 4(10)(ii) and 4(10)(v)(A)
respectively. A knowing violation occurs if the company had “actual awareness … of the
falsity, deception, or unfairness of the conduct in question,” which may be inferred if
“objective manifestations indicate that a person acted with actual awareness.” Tex. Ins.
Code Ann. art. 21.21 § 2(c) (Vernon 2004). Actual awareness implies that a party knows
that what she is doing is false, deceptive or unfair but continues in her course of action
regardless. St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d 51, 53-54
(Tex. 1998); Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 733 (Tex. App.–Austin 2000,
no pet.).        Minnesota Life argues on appeal that the jury was incorrectly instructed as
the language from section 4(10)(v)(A) did not relate to the facts of the case. However,
Minnesota Life did not object to the jury charge at the time of trial or in its subsequent
motion for a new trial, and thus it cannot now object to the section 4(10)(v)(A) language. 
Exxon Corp., 808 S.W.2d at 655; Borden Inc., 860 S.W.2d at 525. Also, the language
from section 4(10)(ii) alone suffices to establish Minnesota Life’s liability under the
insurance code, so the exclusion of section 4(10)(v)(A) would not have changed the result. Section 4(10)(ii) requires a good faith attempt to promptly settle claims once liability
has become “reasonably clear.” Tex. Ins. Code Ann. art. 21.21 § 4(10)(ii) (Vernon 2004). 
Following the death of Mr. Vasquez, Minnesota Life requested proof-of-loss documents
from his surviving spouse. These documents, a death certificate and a medical examiner’s
report, both indicated that the cause of death was accidental and were quickly supplied by
Vasquez. At this point, Minnesota Life’s liability under the policy was “reasonably clear,”
and it therefore had a duty to comply with section 4(10)(ii) and make a good faith effort to
complete its investigation and settle the claim promptly. See Universal Life Ins. Co. v.
Giles, 950 S.W.2d 48, 56 (Tex. 1997) (“An insurer will be liable if the insurer knew or
should have known that it was reasonably clear that the claim was covered.”); Simmons,
963 S.W.2d at 44. 
However, Minnesota Life argues that its liability did not become “reasonably clear”
until it actually received the additional hospital records for which it was waiting. By this
argument, Minnesota Life is essentially asking this Court to adopt a rule allowing insurance
companies to delay settlement of a claim until liability is absolutely and conclusively
established, not just “reasonably clear.” See Giles, 950 S.W.2d at 56. This interpretation,
equating “reasonably clear” with “completely certain” would allow insurance companies,
aware that they likely will have to pay a claim, to delay indefinitely concluding their own
research of a claim without violating the Texas Insurance Code. This interpretation is
clearly unacceptable. The Texas Supreme Court has noted, “An insurer will not escape
liability [under the insurance code] merely by failing to investigate a claim so that it can
contend that liability was never reasonably clear . . . [An] insurance company may also
breach its duty of good faith and fair dealing by failing to reasonably investigate a claim.” 
Giles, 950 S.W.2d at 56 n. 5; cf. Simmons, 963 S.W.2d at 44 (“an insurer cannot insulate
itself from bad faith liability [under the Deceptive Trade Practices – Consumer Protection
Act] by investigating a claim in a manner calculated to construct a pretextual basis for
denial.”). Minnesota Life was fully entitled to make additional inquiries and investigations
into the cause of death for Mr. Vasquez, as there was allegedly some concern that a
seizure may have contributed to the cause of death. However, once the proof-of-loss
documents noting an accidental cause of death were received, Minnesota Life’s liability 
became “reasonably clear” and it was under a duty to use its best efforts in good faith to
avoid further delay. An insurance company is ultimately responsible for the actions of its contractors and
employees and has a non-delegable duty to act on claims. Natividad v. Alexsis, 875
S.W.2d 695, 698 (Tex. 1994). Minnesota Life was stymied by the hospital records
department during its investigation, and it had no control over this delay. However, the
company also failed to seek the specific information it wanted from any other source, such
as the decedent’s doctors or the medical examiner. It also consistently failed to adhere to
its own guidelines on time-limits for the payments of claims, even though it remained the
party responsible for payment of the claim. The hospital’s unresponsiveness to the request
for records does not excuse Minnesota Life from its responsibility to settle claims promptly,
especially as it was not without other options. Based on all the evidence in the record concerning the actions of Minnesota Life,
we find that the jury’s conclusion was not clearly erroneous or manifestly unjust. Cain, 709
S.W.2d at 176. In sum, the finding that Minnesota Life knowingly violated the Texas
Insurance Code was supported by legally and factually sufficient evidence. We overrule
Minnesota Life’s fifth issue.
VI. Post-trial Amendment
In its last issue, Minnesota Life contends that the trial court erred when it allowed
the post-trial pleading amendment. Minnesota Life argues that the case was tried in state
court specifically because of the amount of damages pled in Vasquez’s original petition. 
Minnesota Life had attempted removal to federal court based on diversity jurisdiction, but
the case was remanded back to state court based on the failure of the pleadings to satisfy
the amount-in-controversy requirement. The company now argues that because this
amount controlled the jurisdiction of the state court, it would be unfair to allow the damages
pled to be amended post-verdict to an amount that would have kept the case in federal
court had they been initially been so pled.
This Court reviews decisions to allow amendments of pleading by an abuse-of-discretion standard. Greenhalgh v. Service Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex.
1990); Garner v. Corpus Christi Nat’l Bank, 944 S.W.2d 469, 479 (Tex. App.-Corpus Christi
1997, pet. denied). Parties can amend their original pleadings to conform to the damages
ultimately awarded. Tex. R. Civ. P. 63. Unless the opposing party can show prejudice or
surprise by an amendment, a trial court has no discretion to deny the proposed
amendment. Greenhalgh, 787 S.W.2d at 939. There have been previous jurisdictional
decisions made based on the amount of damages pled where those pleadings were
subsequently amended and increased, and on appeal, those amendments were allowed,
despite the fact that the amendment meant another court could have properly exercised
jurisdiction. See, e.g., Weidener v. Sanchez, 14 S.W.3d 353, 361 (Tex. App. – Houston
2000, no pet.); Cantu v. Weingarten’s, Inc., 616 S.W.2d. 290, 291 (Tex. Civ. App. –
Houston 1981, writ ref’d n.r.e.). Thus, without a showing of surprise or prejudice, the trial
court was acting well within its discretion when it allowed the post-verdict amendment of
the pleading. Minnesota Life argues that it was unfairly prejudiced and surprised because: (1) it
expected damages would be kept below $75,000 when Vasquez’s pleadings, used as a
basis for denying federal jurisdiction, were below $75,000; and (2) its trial strategy would
have been different if it had known the full extent of its potential liability. Its first argument
of “surprise” is unconvincing because Minnesota Life itself argued in its removal action that
the amount in dispute was greater than $75,000. This served as an implicit
acknowledgment that from the company’s perspective, it considered the case to involve
greater damages than what was pled. 
In its appellate brief, Minnesota Life argues that this case is similar to Benefit Trust
Life Ins. Co. v. Littles, 869 S.W.2d 453 (Tex. App. – San Antonio 1993, writ dism’d by agr.). 
In Littles, a proposed post-verdict amendment increasing damages from $10,000 to
$800,000 to conform to the jury verdict was denied. See id. at 478. However, the Littles
holding has never been applied by this Court, and it is distinguishable from the case here. 
The maximum amount of liability in Littles anticipated by the defendants was $50,000,
much less than what was awarded; the jury award was an almost 8,000 percent increase
over the original damages pled. Id. Thus, both surprise and prejudice were adequately
demonstrated. In contrast, here, Minnesota Life knew it potentially faced much greater
liability than what was originally pled, and the amendment only increased damages from
$75,000 to $180,000, hardly a increase comparable to that in the Littles decision.          Minnesota Life also argues that had it anticipated the full extent of the liability it was
facing, its trial strategy would have been different. Additional witnesses would have been
brought to the state to testify, and the company would have requested a later trial date to
ensure a particular witness could be present. However, this argument is unconvincing, as
the increase in damages was not so great as to necessitate an entirely different strategy
at trial. See Weidener, 14 S.W.3d at 377 (finding that the appellants, who argued that they
would have settled or conducted themselves differently at trial, did not present any
evidence of surprise or prejudice). Minnesota Life received a fair trial and had the
opportunity to style its trial strategy in any way it saw fit. The company presented several
witnesses and the deposition of its “star” witness who could not be present at trial; the
changes to the trial strategy that it claims it would have made were not significant. As Minnesota Life has not effectively demonstrated that it was prejudiced or
surprised by the post-verdict amendment of the pleadings, we find that the trial judge did
not abuse its discretion in allowing the amendment. We overrule Minnesota Life’s sixth
issue. 
Conclusion
We accordingly AFFIRM the judgment of the trial court           
 
                                                                           ________________________
                                                                           DORI CONTRERAS GARZA,
                                                                           Justice

Opinion delivered and filed
this the 1st day of April, 2004.