NUMBER 13-05-323-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







JAVIER GUERRERO AND HOMER PENA
, Appellants,


v.



RENE SALINAS, Appellee.





On appeal from the 332nd District Court


of Hidalgo County, Texas.






MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Castillo


Memorandum Opinion by Justice Castillo


 

 Appellants, Javier Guerrero ("Guerrero") and Homer Pena ("Pena"), bring nine
issues, appealing from the trial court's judgment following a bench trial. Judgment
was entered February 1, 2005, in favor of appellee, Rene Salinas ("Salinas"), on his
claims for breach of contract and breach of fiduciary duty, and awarding damages
against Guerrero and against Guerrero and Pena, jointly and severally. Appellants'
motion for new trial was denied and this appeal ensued. We affirm the judgment, as
modified with respect to damages awarded against Guerrero, individually, and remand
solely for recalculation of prejudgment interest as to that award. 

I. Background

 Salinas alleges that in 1998, he and Guerrero desired to open a business
removing gasoline tanks and providing other environmental services. The two men had
known each other since childhood, although they had recently become better
reacquainted while working on projects for the City of McAllen. Salinas testified he
"trusted" Guerrero. Salinas alleged an agreement by which Guerrero, then an engineer
for the City of McAllen, would come to work for Salinas's construction company,
G.A.S. Enterprises, Inc. ("G.A.S."). While there, Guerrero was to work as Salinas's
partner in G.A.S. Environmental Services ("the environmental services business") to
secure new service contracts and build up that business. (1) G.A.S. was to provide
office space, support services and personnel, and pay Guerrero's salary (2) until the
environmental services business generated enough money to take over those salary
payments. G.A.S. did pay Guerrero's salary for nearly a year, after which Guerrero left
that business. Guerrero began work for G.A.S. in July 1998; that same month Salinas
and Guerrero filed an assumed name certificate for the environmental services business
as a partnership. They proceeded to open and operate a bank account in its name,
secured a tax identification number for it from the Internal Revenue Service, and filed
a tax return in its name as a partnership. All expenses of the environmental services
business were allegedly paid by G.A.S. 

 In addition, Salinas alleges a second agreement with Guerrero and Pena, which
involved operations of a laundromat. Salinas alleges an agreement by which he
finished the building of the laundromat and made investments into the corporation, The
Smart Factory, Inc. ("Smart Factory"). In return, one-third of the shares in that
company were to be transferred to Salinas. Salinas contends his actual costs to finish
the Smart Factory laundromat building, the value of his employees' associated labor
(approximately $7,000), plus his monetary investments in Smart Factory totaled
$36,343.78. It is undisputed that no shares were ever transferred to Salinas and he
was never provided with any accounting. Salinas alleges he received no return
whatsoever for his combined investment in the two enterprises. 

 Salinas filed suit in July 2000. (3) The first amended petition includes claims for
breach of contract, breach of fiduciary duty, fraud, and conversion against Guerrero,
individually (relative to the environmental services business), and against Guerrero and
Pena jointly (relative to Smart Factory). Salinas sought actual and exemplary damages,
as well as attorney fees. Guerrero's and Pena's answer includes the affirmative
defenses of failure of consideration, illegality, payment, statute of frauds, and
contributory negligence. 

 Guerrero and Pena counter that no environmental services partnership or other
agreement was ever formed; instead, they argue they only engaged in discussions. 
Guerrero also contends that formation of a business known as Quality Tank was
essentially a prerequisite to his work in the environmental services business. With
respect to Smart Factory, they allege there were no investments and no agreement to
transfer shares of the company. 

 After a three-day bench trial, judgment was entered in favor of Salinas on his
claims for breach of contract and breach of fiduciary duty, awarding (1) as against
Guerrero (with respect to the environmental partnership), $26,513.00 in actual
damages, and $7,649.07 in prejudgment interest; (2) as against Guerrero and Pena,
jointly and severally (with respect to Smart Factory), $36,343.78 in actual damages
and $10,485.28 in prejudgment interest; (3) postjudgment interest; and (4) $6,930.00
in attorney fees. The motion for new trial was denied and this appeal ensued. 

II. Issues on Appeal

 Guerrero and Pena bring nine issues on appeal, contending the trial court erred
in: (1) denying their special exceptions (issue one); (2) denying their motion for
directed verdict (issue two); (3) entering judgment against Guerrero (issue three) or
Pena (issue four), individually, because evidence was insufficient to support either (a)
that a partnership was formed or (b) damages; (4) finding the evidence sufficient to
support a judgment against Guerrero for breach of contract, breach of fiduciary duty,
or an award of $26,513 (issue five); (5) finding the evidence sufficient to support a
judgment against Guerrero and Pena, jointly and severally, for breach of contract,
breach of fiduciary duty, or an award of $36,343.78 (issue six); (6) failing to apply the
statute of frauds to the actions for breach of contract (issue seven); (7) failing to enter
findings of fact and conclusions of law (issue eight); and (8) finding the evidence
sufficient to award attorney fees (issue nine). 

III. Special Exceptions

 Guerrero and Pena contend, in their first issue, that the trial court erred in
denying their special exceptions regarding the causes of action brought against them.

A. Standard of Review

 The trial court has wide discretion in ruling on special exceptions. Mulvey v.
Mobile Producing Tex. & N.M., 147 S.W.3d 594, 603 (Tex. App.-Corpus Christi
2004, pet. denied); Kutch v. Del Mar College, 831 S.W.2d 506, 508 (Tex.
App.-Corpus Christi 1992, no writ). To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to any
guiding rules or principles, in other words, whether the act was arbitrary or
unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). Merely because a trial court may decide a matter within its discretion in a
different manner than an appellate court would in a similar circumstance does not
demonstrate that an abuse of discretion has occurred. Id. 

B. Analysis

 Texas Rules of Civil Procedure 90 and 91 provide the means for a party to
specially except to an adverse party's pleadings. Tex. R. Civ. P. 90, 91; Adams v.
First Nat'l Bank of Bells/Savoy, 154 S.W.3d 859, 876 (Tex. App.-Dallas 2005, no
pet.). The purpose of special exceptions is to furnish a party with a medium by which
to force clarification of an adverse party's pleadings when they are not clear or
sufficiently specific. Adams, 154 S.W.3d at 876 (citing Villarreal v. Martinez, 834
S.W.2d 450, 451 (Tex. App.-Corpus Christi 1992, no writ)). Rule 45 requires that
pleadings consist of statements giving an opponent fair notice of the allegations as a
whole. Tex. R. Civ. P. 45; Perez v. Briercroft Serv. Corp., 809 S.W.2d 216, 218 (Tex.
1991). The purpose is to provide the opposing party with sufficient information to
enable him to prepare a defense. Paramount Pipe & Supply Co. v. Muhr, 749 S.W.2d
491, 494-95 (Tex. 1988). 

 While special exceptions, as a general rule, are to be filed either with a
defendant's answer or shortly thereafter, they may even be raised during trial, so long
as, in a nonjury trial, they are raised before the judgment is signed. Tex. R. Civ. P. 90;
Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Commc'ns Corp., 49
S.W.3d 520, 534 (Tex. App.-Corpus Christi 2001, pet. denied). Here, Guerrero and
Pena filed their special exceptions, in conjunction with a first amended answer, at 4:45
p.m. on November 9, 2004. A supplemental answer, adding the affirmative defenses
of the statute of frauds and contributory negligence, was apparently filed on November
12, 2004. (4) Trial was scheduled for and proceeded on November 15, 2004. All
parties generally acknowledge the special exceptions were implicitly denied. We
construe the record as reflecting an implicit denial of the exceptions. (5)

 The special exceptions attack nearly all of Salinas's petition. With respect to
the environmental partnership and the claims against Guerrero, Guerrero and Pena
allege that Salinas's petition failed to plead all elements of the various causes of
action, and lacked sufficient detail to provide them with fair notice of the nature and
issues of the controversy, such that they could not adequately determine what
testimony would be relevant. They contend that allegations of conversion, fraud and
breach of contract were inadequate to provide fair notice of the claims alleged. With
respect to Smart Factory and the claims against both Guerrero and Pena, they similarly
specially excepted that allegations (1) failed to differentiate between Guerrero and
Pena as parties to any agreement, (2) failed to state the basis for any alleged fiduciary
duty, (3) failed to identify contracts allegedly entered into by Guerrero and Pena on
behalf of Smart Factory, and in which Salinas claimed an interest, (4) failed to cite
elements of the various causes of action, and, in general, (5) failed to provide
sufficient facts in support of the allegations to state a cause of action. (6) 

 In their motion for new trial and on appeal, Guerrero and Pena claim that the trial
court erred because the amended pleadings "failed to specify what cause of action,
and the required elements thereof, were being alleged as to each Defendant."

 When evaluating special exceptions, the trial court must accept as true all
material factual allegations and all factual statements reasonably inferred from the
allegations in the pleadings being challenged. Sorokolit v. Rhodes, 889 S.W.2d 239,
240 (Tex. 1994). Consistent with the trial court's discretion, pleadings are to be
construed liberally. See Aranda v. Ins. Co. of N. Am., 748 S.W.2d 210, 213 (Tex.
1988). We ignore any factual propositions outside the petition that tend to contradict
the petition. Hur v. City of Mesquite, 893 S.W.2d 227, 233 (Tex. App.-Amarillo
1995, writ denied).

 The rule on special exceptions does not require that a plaintiff set out in his
pleadings the evidence upon which he relies to establish his asserted cause of action. 
Tex. R. Civ. P. 45; Paramount Pipe, 749 S.W.2d at 494-95. It is not a valid objection
to complain that the pleading does not set out enough factual details, if fair notice of
the claim is given. Sw. Bell Tel. Co. v. Garza, 164 S.W.3d 607, 616 (Tex. 2004)
(citing Roark v. Allen, 633 S.W.2d 804, 810 (Tex. 1982)). Similarly, complaining that
a petition does not state a cause of action is inadequate, unless the defendant also
specifically points out the defect or the reason the claim is invalid. Mowbray v. Avery,
76 S.W.3d 663, 677 (Tex. App.-Corpus Christi 2002, pet. denied). If a plaintiff does
not plead all elements of a cause of action, a defendant may file special exceptions
requesting a more specific pleading, but in doing so must specifically identify any
alleged missing elements. Id. "A special exception shall not only point out the
particular pleading excepted to but it shall also point out intelligibly and with
particularity the defect, omission, obscurity, duplicity, generality or other insufficiency
in the allegations in the pleading excepted to." Tex. R. Civ. P. 91; Spencer v. City of
Seagoville, 700 S.W.2d 953, 957 (Tex. App.-Dallas 1985, no writ). 

 Here, the petition separately addresses the facts and allegations with respect
to both the alleged environmental services partnership and Smart Factory. The facts
and allegations are clearly separated, both as to the alleged wrongful breaches, as well
as to the defendants involved with each business. We conclude the petition
adequately apprises the parties of the claims against each of them. Further, Guerrero
and Pena did not specifically identify missing elements in the alleged causes of action. 
See Mowbray, 76 S.W.3d at 677. 

 We also cannot ignore that trial proceeded below without further mention of the
special exceptions in the record. Despite claiming that the pleadings were so defective
that they failed to apprise Guerrero or Pena of what causes of action were in issue as
to each of them, no related objections were raised with respect to any of the
testimony or documentary evidence presented. No objections were raised alleging
inadequate discovery because of inadequate notice of the claims, or impaired ability
to prepare a defense. There was no allegation of surprise. Guerrero and Pena both
actively participated in the trial. Each had the opportunity to and did testify; their
counsel conducted full cross-examination of all witnesses. See Boyles v. Kerr, 855
S.W.2d 593, 601 (Tex. 1993) (citing Tex. R. Civ. P. 67; Austin Area Teachers Fed.
Credit Union v. First City Bank-Northwest Hills, 825 S.W.2d 795, 800 (Tex.
App.-Austin 1992, writ denied)) (recognizing that trial by consent can occur where
it is clear from the record that issues allegedly not raised by the pleadings are tried by
the express or implied consent of the parties). 

 We conclude the trial court did not abuse its discretion in denying the special
exceptions. Further, Guerrero and Pena have not shown reversible error. Tex. R. App.
P. 44.1(a). We overrule the first issue on appeal. 

IV. Statute of Frauds

 In issue seven, Guerrero and Pena complain that the trial court erred in failing
to apply the statute of frauds by implicitly finding that the parties contemplated the
possibility of performance within one year, thereby satisfying the statute of frauds
(pleaded as an affirmative defense). Neither contract in issue was written. 

 The statute of frauds, set forth in section 26.01 of the Texas Business and
Commerce Code, provides that, to be enforceable, a promise or agreement which
cannot be performed within one year from the date of making the agreement must be
in writing and signed by the person to be charged with the promise. Tex. Bus. & Com.
Code Ann. § 26.01(b)(6) (Vernon Supp. 2005); Niday v. Niday, 643 S.W.2d 919, 920
(Tex. 1982); Beverick v. Koch Power Co., 186 S.W.3d 145, 149 (Tex. App.-Houston
[1st Dist.] 2005, pet. denied). Whether a contract falls within the statute of frauds
is a question of law. Beverick, 186 S.W.3d at 149 (citing Iacono v. Lyons, 16 S.W.3d
92, 94 (Tex. App.-Houston [1st Dist.] 2000, no pet.)). A contract that could possibly
be performed within a year, however improbable performance within one year may be,
does not fall within the statute of frauds. Niday, 643 S.W.2d at 920 (stating that, if
an agreement, either by its terms or by the nature of the required acts, cannot be
performed within one year, it falls within the statute of frauds and must be in writing). 
Beverick, 186 S.W.3d at 149 (citing Hall v. Hall, 308 S.W.2d 12, 15, (Tex. 1957)). 
The fact that the entire performance within one year is not required, or expected, will
not bring an agreement within the statute. Id. (citing Iacono, 16 S.W.3d at 95). 

 In Gano v. Jamail, 678 S.W.2d 152, 154 (Tex. App.-Houston [14th Dist.]
1984, no pet.), Gano urged that partnership agreements terminable at will are
susceptible of performance within a year and therefore not subject to the statute of
frauds. Id. (citing Boutell v. Hill, 498 S.W.2d 713, 714 (Tex. Civ. App.-El Paso 1973,
no writ); Heathington v. Heathington Lumber Co., 398 S.W.2d 822, 826 (Tex. Civ.
App.-Amarillo 1966), on second appeal, 420 S.W.2d 252 (Tex. Civ. App.-Amarillo
1967, writ ref'd n.r.e.); Howell v. Bowden, 368 S.W.2d 842, 846 (Tex. Civ.
App.-Dallas 1963, writ ref'd n.r.e.); Palmetto Lumber Co. v. Gibbs, 52 S.W.2d 120,
128 (Tex. Civ. App.- Beaumont 1932), aff'd, 80 S.W.2d 742 (1935)). In each of
these cases, although no time limit was set, the entire agreement was capable of being
fully performed within one year if the parties so desired. Id. Gano was distinguishable
because the agreement, by Gano's own testimony as to the nature of the cases, was
not capable of such performance within the one-year period. Id. Thus it fell clearly
within the Niday rule. Id. (citing Niday, 643 S.W.2d at 920). Where evidence
conclusively proves that the agreement, either by its terms or by the nature of the
required acts, cannot be completed within a year of its making, then an oral contact
violates the statute of frauds as a matter of law and is unenforceable. Gano, 678
S.W.3d at 153 (citing Niday, 643 S.W.2d at 920). 

 Evidence that the agreements could not be completed within one year is not in
the record. With respect to the environmental services business, the contracts on
which Salinas seeks recovery were in fact completed within the time of the alleged
partnership, which was less than one year. Similarly, with respect to Smart Factory,
Salinas's alleged contributions, including his investment of monies and the completion
of the building, were indisputably completed within the year. The paperwork
connected with any obligation to tender ownership in shares in exchange therefor
could also have been completed within the year. See Beverick, 186 S.W.3d at 149. 
Where, as here, the time of performance is not specifically set and there is no
agreement that the objects of the partnership cannot be performed within a year, the
general rule is that such an oral agreement will not violate the statute of frauds. Gano,
678 S.W.2d at 153; see Miller v. Riata Cadillac Co., 517 S.W.2d 773, 775 (Tex.
1974) (stating that if a contract can, from the terms of the agreement, be performed
within one year, it is not within the statute of frauds). The trial court implicitly found
that because the contracts were capable of being performed in a year and were
performed within the year, the statute of frauds did not apply. We conclude that the
finding is supported by the record and, thus, the court did not abuse its discretion. We
overrule Guerrero's and Pena's seventh issue on appeal. 

V. Failure to Provide Findings of Fact

 In issue eight, Guerrero and Pena contend the trial court erred in failing to
provide requested findings of fact and conclusions of law. However, their "request"
for findings is actually a listing encompassed within their proposed final judgment,
forwarded to the court on January 31, 2005. There is neither a separate request nor
a reference to the proposed findings and conclusions either in the cover letter to the
court or in the title of the proposed final judgment. The final judgment does not
include findings of fact and conclusions of law. Guerrero's and Pena's motion for new
trial, filed February 28, 2005, similarly makes no mention of any request for findings
of fact and conclusions of law. No notice of past due findings of fact and conclusions
of law was filed. 

 Rule 296 provides that any party may request the court to state in writing its
findings of fact and conclusions of law. Such a request is to be entitled "Request for
Findings of Fact and Conclusions of Law." Tex. R. Civ. P. 296. There is no such
separate request in the record. (7) Rule 297 then provides that if such findings are not
provided by the trial court, the requesting party must timely file a "Notice of Past Due
Findings of Fact and Conclusions of Law." Tex. R. Civ. P. 297. There is no such
notice in the record. (8) The failure to file such a notice constitutes a waiver of
Guerrero's and Pena's right to complain about the trial court's failure to file findings
of fact and conclusions of law. Tex. R. App. P. 33.1; Curtis v. Comm'n for Lawyer
Discipline, 20 S.W.2d 227, 232 (Tex. App.-Houston [14th Dist.] 2000, no pet.);
Salinas v. Beaudrie, 960 S.W.2d 314, 317 (Tex. App.-Corpus Christi 1997, no pet.). 

 Because Guerrero and Pena waived error, we overrule their eighth issue on
appeal. 

VI. Sufficiency of the Evidence

 In issues three, four, five, six and nine, Guerrero and Pena challenge the
sufficiency of the evidence to support the trial court's judgment, as to the
environmental partnership, Smart Factory, and attorney fees. In their second issue,
Guerrero and Pena complain that the trial court erred in denying their motion for
directed verdict, based upon insufficiency of the evidence. (9) Because both review of
the legal sufficiency of the evidence and the denial of a motion for directed verdict
involve the same legal sufficiency standard of review, City of Keller v. Wilson, 168
S.W.3d 802, 823 (Tex. 2005), we construe the complaint involving the motion for
directed verdict as a challenge to the legal sufficiency of the evidence. 

 Where there are no findings of fact or conclusions of law, and any complaint
related thereto has been waived, the judgment of the trial court implies all necessary
findings of fact to support it. Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 52
(Tex. 2003) (citing BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795
(Tex. 2002); Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990)). However, we
are not thereby precluded, as suggested by Salinas, from reviewing the legal or factual
sufficiency of the evidence. (10) Where, as here, the appellate record includes both the
reporter's and clerk's records, implied findings of fact may be challenged for legal or
factual sufficiency. Sixth RMA Partners, 111 S.W.3d at 52 (citing BMC Software, 83
S.W.3d at 795; Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989) (per
curiam)); Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992). We
review implied findings by the same standards we use in reviewing the sufficiency of
the evidence to support a jury's answers or a trial court's fact findings. Casino Magic
Corp. v. King, 43 S.W.3d 13, 19 (Tex. App.-Dallas 2001, pet. denied) (op. on reh'g);
Roberson, 768 S.W.2d at 281.

A. Standard of Review

1. Legal Sufficiency

 We address legal-sufficiency challenges as either "no-evidence" or "matter-of-law" issues. Gooch v. Am. Sling Co., 902 S.W.2d 181, 183-84 (Tex. App.-Fort
Worth 1995, no writ). We analyze the issue as a "no-evidence" challenge when, as
here, the party complaining on appeal did not bear the burden of proof at trial. Id. 
Guerrero and Pena must show the record presents no evidence to support the adverse
judgment. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 

The final test for legal sufficiency must always be whether the evidence
at trial would enable reasonable and fair-minded people to reach the
verdict under review. Whether a reviewing court begins by considering
all the evidence or only the evidence supporting the verdict,
legal-sufficiency review in the proper light must credit favorable evidence
if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not. 


City of Keller, 168 S.W.3d at 827. We review the evidence "in the light most
favorable to the [judgment], disregarding all contrary evidence that a reasonable [fact
finder] could have disbelieved." Ysleta Indep. Sch. Dist. v. Monarrez, 177 S.W.3d
915, 917 (Tex. 2005) (per curiam). The trier-of-fact remains the sole judge of the
credibility of the witnesses and the weight to be given to their testimony. Keller, 168
S.W.3d at 819. It may choose to believe one witness and disbelieve another, and a
reviewing court cannot impose its own opinions to the contrary. Id. "A reviewing
court cannot substitute its judgment for that of the trier-of-fact, so long as the
evidence falls within this zone of reasonable disagreement." Id. at 822. "[T]he court
must consider evidence in the light most favorable to the [judgment], and indulge every
reasonable inference that would support it. But if the evidence allows for only one
inference, neither jurors nor the reviewing court may disregard it." Id. 

 We overrule a legal-sufficiency issue if the record reflects any evidence of
probative force to support the finding. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d
426, 430 (Tex. 1997). We sustain a legal-sufficiency challenge when: (1) the record
establishes the complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. 
Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam); Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Hines v. Comm'n
for Lawyer Discipline, 28 S.W.3d 697, 701 (Tex. App.-Corpus Christi 2000, no pet.). 
If there is more than a scintilla of evidence to support the finding, the legal-sufficiency
challenge fails. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,
960 S.W.2d 41, 48 (Tex. 1998). 

 The evidence is no more than a scintilla and, in legal effect, is no evidence
"[w]hen the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence." Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983). Conversely, more than a scintilla exists when the
evidence "rises to a level that would enable reasonable and fair-minded people to differ
in their conclusions." Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994). We
reverse and render judgment when we sustain a legal-sufficiency point. Vista
Chevrolet, Inc. v. Lewis, 709 S.W.2d 176, 177 (Tex. 1986) (per curiam); Heritage
Res., Inc. v. Hill, 104 S.W.3d 612, 619 (Tex. App.-El Paso 2003, no pet.).

2. Factual Sufficiency

 When reviewing factual sufficiency of the evidence, the party attacking a finding
on which an adverse party bore the burden of proof must show that the record
presents "insufficient evidence" to support the finding. Gooch, 902 S.W.2d at 184. 
We examine and consider all the evidence. Golden Eagle Archery v. Jackson, 116
S.W.3d 757, 761 (Tex. 2003); Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402,
406-07 (Tex. 1998). The finding is set aside only if the evidence standing alone is too
weak to support the finding, or it is so against the overwhelming weight of the
evidence as to manifestly unjust and clearly wrong. Golden Eagle, 116 S.W.3d at
761. 

B. The Law-Breach of Contract To prevail on a breach-of-contract claim, a party must prove that (1) a valid
agreement between plaintiff and defendant existed, (2) the plaintiff performed or
tendered performance, (3) the defendant breached the agreement, and (4) the plaintiff
sustained damages as a result of the breach. Beverick, 186 S.W.3d at 150 (citing
Prime Prod., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App.-Houston [1st
Dist.] 2002, pet. denied)). The elements of a valid contract are: (1) an offer, (2) an
acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5)
execution and delivery of the contract with the intent that it be mutual and binding. 
Id. (citing Prime Prod., 97 S.W.3d at 636). In determining the existence of an oral
contract, the court looks to the communications between the parties and to the acts
and circumstances surrounding those communications. Id.; Prime Prods., 97 S.W.3d
at 636. 

C. The Law-Breach of Fiduciary Duty

 The relationship between partners is fiduciary in character, and "imposes upon
all the participants the obligation of loyalty to the joint concern and of the utmost good
faith, fairness, and honesty in their dealings with each other with respect to matters
pertaining to the enterprise." Bohatch v. Butler & Binion, 977 S.W.2d 543, 545 (Tex.
1998) (quoting Fitz-Gerald v. Hull, 237 S.W.2d 256, 264 (Tex. 1951)). 

 Additionally, an informal fiduciary relationship may arise where one person trusts
and relies upon another, whether the relationship is a moral, social, domestic, or purely
personal one. Meyer v. Cathey, 167 S.W.3d 327, 331 (Tex. 2005); Schlumberger
Tech. Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997). To impose an informal
fiduciary relationship in a business transaction, a special relationship of trust and
confidence must exist prior to, and separate from, the parties' agreement. 
Schlumberger Tech. Corp., 959 S.W.2d at 177.

D. Analysis-The Environmental Services Business

1. Liability

 Salinas alleges that Guerrero breached his agreement with Salinas to develop
the environmental services business, and to share its profits and losses as a partner. 
He also alleges that Guerrero breached the fiduciary duty he owed to Salinas. 

 A partnership in Texas is an association of two or more persons to carry on as
co-owners of a business for profit. Tex. Rev. Civ. Stat. Ann. art. 6132b, § 6(1)
(Vernon 1970); Valero Energy Corp. v. Teco Pipeline Co., 2 S.W.3d 576, 584 (Tex.
App.-Houston [14th Dist.] 1999, no pet.); State v. Houston Lighting & Power Co.,
609 S.W.2d 263, 267 (Tex. Civ. App.-Corpus Christi 1980, writ ref'd n.r.e.). An
express or implied partnership agreement has four essential elements: (1) a
community of interest in the venture, (2) an agreement to share profits, (3) an
agreement to share losses, and (4) a mutual right of control or management of the
enterprise. Valero, 2 S.W.3d at 585 (citing Schlumberger, 959 S.W.2d at 176). As
a matter of law, a partnership does not exist if any one of these elements is not
established. Id.; Stephanz v. Laird, 846 S.W.2d 895, 900 (Tex. App.-Houston [1st
Dist.] 1993, no writ). 

 The question of the existence of a partnership is one of fact. Cherokee Village
v. Henderson, 538 S.W.2d 169, 174 (Tex. Civ. App.-Houston [1st. Dist.] 1976, writ
dism'd w.o.j.); Fuller v. Fuller, 518 S.W.2d 250, 251 (Tex. Civ. App.-Beaumont
1974, writ ref'd n.r.e.); see also Tex-Co Grain Co. v. Happy Wheat Growers. Inc., 542
S.W.2d 934, 936 (Tex. Civ. App.-Amarillo 1976, no writ). The burden of proof is
upon the person seeking to establish a partnership or joint venture, and the intention
of the parties is the real test. Houston Lighting & Power, 609 S.W.2d at 267. No
single fact may constitute a complete and final test of partnership, because each case
must rest on its own particular facts in determining the presence or absence of the
attributes of a partnership relation. Id.; Davis v. Gilmore, 244 S.W.2d 671, 673 (Tex.
Civ. App-San Antonio 1951, writ ref'd). "The trier of fact must consider all of the
evidence bearing on the issue and make a fact finding as to whether a partnership was
formed. If there is substantial and probative evidence supporting the finding, it will not
be disturbed on appeal." Tex-Co. Grain Co., 542 S.W.2d at 937. As noted above,
we here imply all findings in favor of the trial court's judgment. Sixth RMA Partners,
111 S.W.3d at 52; BMC Software, 83 S.W.3d at 795. 

 At trial, Salinas presented evidence to show a partnership with Guerrero to
provide environmental services. Evidence included his testimony, an assumed name
certificate filed July 2, 1998, a copy of a 1998 tax return tendered to the bank, bank
account records, including establishment of the account as a partnership (signed by
both Salinas and Guerrero), (11) a business card of Salinas in the name of the partnership,
and a copy of a letter by Guerrero to solicit business, written on business letterhead
of the partnership. Evidence tendered to establish Salinas's investment in the
environmental services business, in addition to the provision of office space and
support supplies and personnel included the following: (1) Salinas's expenditures to
pay for Guerrero's environmental licenses, certifications, and continuing education
(totaling $3,156.86); (12) (2) Salinas's purchase of survey equipment necessary for the
business which was never returned by Guerrero (at a cost of $2,200); and (3)
Salinas's purchase of a laptop computer and zip drive to facilitate Guerrero's
development of the business, which was also never returned by Guerrero (at a cost of
$1,388.73 plus $335.53, or $1,724.26). (13) Salinas contends none of these expenses
would have been made to benefit the construction company. He maintains that,
instead, these expenditures were made to further development of the environmental
services business. Salinas also tendered (1) a copy of a contract between the
environmental services business and the City of McAllen, (2) copies of permits issued
to that business for it to remove a tank for an individual in Houston, (3) a copy of a
communication from Guerrero relating to an invoice for "consulting services" which
Salinas alleged was evidence of another contract, and (4) communications between
the environmental services company and an environmental laboratory relating to the
No. 002, 4th Street, Elsa, Texas, project. The bank records reflect numerous checks
and deposits made to the account, several checks written to Guerrero, and upon
closing of the bank account, that all remaining funds were transferred directly to
Guerrero's account. It was uncontested that Salinas never received any monies from
the environmental services business or its bank account. 

 Guerrero argues that there was never any partnership, despite all the filings, the
assumed name certificate, and the operation of the bank account on which both
individuals remained at all times, because the business of Quality Tanks admittedly
never became operational. He contends they only discussed formation of the
environmental services business, but it never happened. However, we note that the
assumed name certificate filed for Quality Tanks was filed in January 1998. Guerrero
did not leave his position with the City of McAllen until June or July 1998, and the
assumed name certificate and other steps undertaken to form the environmental
services business were not initiated until July 1998. If operation of the business of
Quality Tanks was a necessary prerequisite for Guerrero's participation in the
environmental services business, these events would not have occurred in this
sequence. 

 Evidence was tendered to support that (a) Salinas and Guerrero shared a
community of interest in the environmental services business, (b) actions were
undertaken with third parties holding out the business as a partnership, and (c) there
was an agreement to share the profits. As to the fourth element, we conclude there
was similarly evidence to share losses; whether or not such agreement was explicit,
it was certainly implicit. First, Salinas testified to his understanding that he agreed to
share in profits and losses, and that profits necessarily would not result if they were
offset by losses. Second, the evidence reflects that if the business was not profitable,
Guerrero would suffer the loss of his time and energy in getting the business
established. Salinas would suffer the loss of the support monies he contributed to the
further the business, including the monies expended to ensure Guerrero had the
appropriate environmental licenses and continuing education, as well as various office
services and personnel Salinas provided. Third, evidence reflected that both Salinas
and Guerrero enjoyed a mutual "right" of control or management of the enterprise,
including the right to write checks on the bank account, whether or not such a right
was simultaneously or consistently exercised by each.

 Evidence of probative force was tendered to support the trial court's conclusion
that the relationship between Salinas and Guerrero was a partnership, and that
Guerrero breached his agreement with Salinas. ACS Investors, Inc., 943 S.W.2d at
430. As partners, Salinas and Guerrero owed each other a fiduciary duty as a matter
of law. Bohatch, 977 S.W.2d at 545. The evidence was therefore legally sufficient. 
Id. We conclude the evidence was similarly factually sufficient in this regard, as the
trial court's finding is not so against the overwhelming weight of the evidence as to
be manifestly unjust or clearly wrong. Golden Eagle, 116 S.W.3d at 761. 

2. Damages

 With respect to damages, we note that no punitive damages were awarded. 
Salinas sought economic damages, including one-half of the profits of the
environmental services business. The trial court awarded damages of $26,513.00 as
against Guerrero. There is no evidence of costs or obligations of the business, other
than that Salinas's construction company bore all those expenses. 

 Evidence was tendered to show a contract between the City of McAllen and the
environmental services business, including a copy of the contract and copies of checks
reflecting payment by the City on the contract to the environmental services business
in the total amount of $18,803.00. (14) A second contract was alleged with a B. Salazar
for tank removal. Evidence reflected that permits were issued by the City of Houston
in the name of the environmental services business to remove the tank during the term
of the partnership. Salinas testified that a deposit made into the partnership account
in the amount of $1,250 related to this contract. While there is documentary evidence
of this deposit, nothing affirmatively connects it to this contract. Later in his
testimony, Salinas stated that he understood the value of the contract with Salazar
was $15,000. However, on cross examination, he conceded that was just what
"someone" told him, and he had no personal knowledge or evidence to justify that
claim for $15,000. Guerrero did not dispute existence of the agreement with Salazar,
but said it was on behalf of the construction company and that, in any case, Salazar
never paid anything for this tank removal. 

 Salinas alleged that a third agreement to perform services on behalf of an "I.
Peralez" had a value of $3,750.70, based upon a bill he found in Guerrero's offices at
G.A.S. The bill was generated by Guerrero in December 1998 for work he performed
for Peralez as a consultant between March 31 and July 13, 1998. Guerrero testified
he didn't remember providing any environmental services for her and that she was a
lawyer. A fourth agreement was alleged in connection with "Job 0002" for 4th
Street in Elsa. Salinas testified he believed that job had a value of $10,000, but had
no hard evidence of that fact. Documentary evidence showed that an environmental
laboratory performed soil analysis related to this project for the environmental services
business in December 1998; no other evidence was produced. Guerrero testified this
related to a tank removal, but that work was again performed by the construction
company and no one was paid for this job. 

 Guerrero and Pena have challenged the sufficiency of the evidence to support
the damages award. We conclude that the evidence is legally insufficient to support
the total award given by the trial court. 

 We interpret Salinas's expenditures for Guerrero's licenses, the survey
equipment, and the laptop computer as investments into the environmental services
business. Duncan v. Lichtenberger, 671 S.W.2d 948, 953 (Tex. App.-Fort Worth
1984, writ ref'd n.r.e.) (finding the plaintiff entitled to recover monies invested in
return for a share of the company). By prevailing on his claim for breach of fiduciary
duty, Salinas was entitled to recover his actual damages, including out-of-pocket
losses and economic injuries resulting from the breach of that duty. "The breach of
a fiduciary duty is the type of wrong for which the courts of this State will afford a
remedy." Id. The investment for Guerrero's licenses and continuing education totaled
$3,156.86. The value of the survey equipment and the computer which Guerrero did
not leave with the business when he left was $3,924.26. 

 With respect to the claim for lost profits from the four alleged contracts (relating
to the breach of contract claim), we conclude there is legally insufficient evidence to
award damages based on three of the four alleged contracts. There is no evidence
"[w]hen the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence." Kindred, 650 S.W.2d at 63. 
Suspicion linked to other suspicion produces only more suspicion, not some evidence. 
Pitzner,106 S.W.3d at 727-28. Pure speculation as to the existence of a contract, its
value, or receipt of payment for the contract is no evidence. See id. There is legally
and factually sufficient evidence to support damages based on the contract with the
City of McAllen, which was valued at $18,803.

 We conclude the evidence supports an award against Guerrero with respect to
the environmental services business in the total amount of $15,232.62. (15) 
Accordingly, we overrule Guerrero's and Pena's issues two, three, and five as to
sufficiency of the evidence related to the environmental services business, except as
they relate to the amount of damages. We modify the judgment in this regard to
reflect an award of $15,232.62. 

E. Analysis-The Laundromat and Smart Factory

1. Liability

 With respect to Salinas's allegations related to Smart Factory, in addition to his
testimony, Salinas tendered (1) a copy of the company's articles of incorporation filed
in 1996, along with records reflecting forfeiture of the corporate charter for failure to
pay franchise taxes, and (2) copies of checks from G.A.S. to Smart Factory which
Salinas contended represented his investments into the company. Salinas also
tendered a separate check for $16,603.29, which he stated did not represent
investments into Smart Factory, but instead reflected his reimbursement to that
company for his use of Smart Factory's lines of credit at McCoy's and Builder's
Square. Similarly, Salinas tendered copies of receipts and checks made payable to
Guerrero as reimbursements (including numerous reimbursements for purchases at
McCoy's and Builder's Square). (16) 

 Salinas testified that in exchange for his investments and work done on the
building, he was to be given one-third interest in Smart Factory, pursuant to his
discussions with Guerrero. Salinas testified that he worked to "finish out" the building
so that the laundromat could become operational, including completion of some interior
wall work, interior and exterior painting, and trenching of a gas line. He did not tender
receipts for related expenditures, but testified that labor contributed by his employees
to finish the building totaled approximately $7,000. 

 Pena and Guerrero disputed that Salinas had an interest in Smart Factory, and
contended that all monies Salinas paid to Smart Factory were reimbursements for
charges on behalf of his construction company on Smart Factory's lines of credit at
McCoy's and Builder's Square. No receipts or other evidence of those expenditures
or lines of credit were tendered into evidence. Guerrero and Pena also testified that
some of the monies received from Salinas were a loan to Smart Factory. They
testified that Salinas only painted the exterior of the building and trenched the gas line,
and urged that an estimated value of that work was approximately $200. Both agreed
Salinas never received any shares in Smart Factory, or any monies from that business. 
They contended he never had any right to control the business of Smart Factory.

 Salinas concedes he used Smart Factory's, as well as Guerrero's, lines of credit
at McCoy's and Builder's Square to benefit his construction business. He tendered
evidence of a check from him to Smart Factory for reimbursement. (17) Salinas tendered
other checks from his business to Smart Factory as evidence of investments in, rather
than reimbursements to, Smart Factory. Although Guerrero and Pena contend all were
actually reimbursements for use of the credit line, they tendered no evidence other
than their testimony to support those contentions. 

 Some evidence of Salinas's work on the buildings and investments into the
company existed. We conclude the evidence was legally sufficient to support the trial
court's conclusions on the merits with respect to Smart Factory. "[L]legal-sufficiency
review in the proper light must credit favorable evidence if reasonable jurors could, and
disregard contrary evidence unless reasonable jurors could not." City of Keller, 168
S.W.3d at 827.

 With respect to factually sufficiency, the finding of the trial court will be set
aside only if the evidence standing alone is too weak to support the finding or the
finding is so against the overwhelming weight of the evidence as to be manifestly
unjust and clearly wrong. Golden Eagle, 116 S.W.3d at 761. Here, sufficient
evidence was tendered to support Salinas's contentions, including his testimony and
some documentary evidence, that he did work on behalf of and made investments into
Smart Factory but received nothing in return. Opposing evidence consisted principally
of contradictory testimony. 

 The trier-of-fact, whether the trial court or the jury, remains the sole judge of
the credibility of the witnesses and the weight to give their testimony. Keller, 168
S.W.3d at 819. We consider evidence in the light most favorable to the verdict, and
indulge every reasonable inference that would support it. Id. Additionally, here we
imply all necessary findings of fact to support the judgment. Sixth RMA Partners, 111
S.W.3d at 52; BMC Software, 83 S.W.3d at 795. 

 We note that Smart Factory is a corporation and not a partnership. Guerrero
was an officer (Vice President) and director of that corporation. We imply a finding
by the trial court that Guerrero had either authority or apparent authority to enter into
contracts on behalf of the corporation. When an agent acts within the scope of this
apparent authority, the acts bind the principal as though the agent actually possessed
such authority. In re Weekly Homes, L.P., 180 S.W.3d 127, 131 n.15 (Tex. 2005); 
Biggs v. U.S. Fire Ins. Co., 611 S.W.2d 624, 629 (Tex. 1981). We further note that
no defense was ever raised that Guerrero, by entering into such a contract, did so
outside his capacity as an agent of the corporation or without its authority. 

 Here, Salinas sued the individual shareholders, Guerrero and Pena, instead of
Smart Factory because its charter had already been forfeited. (18) In a suit against a
corporation whose right to sue was forfeited by nonpayment of franchise taxes,
although it retains legal title to its assets, beneficial title has passed to the
stockholders. M & M Constr. Co. v. Great Am. Ins. Co., 747 S.W.2d 552, 555 (Tex.
App.-Corpus Christi 1988, no writ). Those stockholders may then prosecute or
defend such actions as may be necessary to protect their property rights. Id. We
further note, in any event, that no defense was raised, either in any pleading, at trial
or on appeal, to challenge the capacity of Guerrero or Pena to be named as defendants
or sued in their individual capacities. Any such potential defense has therefore been
waived. Sixth RMA Partners, 111 S.W.3d at 56; Werner v. Colwell, 909 S.W.2d 866,
870 (Tex. 1995). 

 We conclude the evidence was legally and factually sufficient to support a
finding of breach of contract with respect to Smart Factory. We have concluded
Guerrero had apparent authority to enter into the contract on behalf of Smart Factory. 
Regardless of whether there were communications on the subject between Salinas and
Pena, Pena as well as Guerrero retained beneficial title to the assets of Smart Factory
subsequent to the forfeiture of its charter. 

2. Damages

 The trial court awarded damages related to the Smart Factory against Guerrero
and Pena, jointly and severally, in the amount of $36,343.78. This sum reflects the
value of Salinas's monetary investments in Smart Factory ($29,343.78) plus the value
of his employees' labor to finish out the laundromat building ($7,000). We conclude
the evidence is legally and factually sufficient to support this award.

 We overrule Guerrero's and Pena's issues two, four, and six as to sufficiency
of the evidence related to Smart Factory. 

F. Analysis-Attorney Fees

 In issue nine, Guerrero and Pena contest the sufficiency of evidence to support
the award for attorney fees. To recover such fees, the plaintiff must prove they were
reasonable and necessary for the prosecution of the case. Arthur Andersen & Co. v.
Perry Equip. Corp., 945 S.W.2d 812, 818-19 (Tex. 1997). While eight factors have
been used to determine reasonableness of attorney fees, a plaintiff need not present
evidence on all eight factors. See Academy Corp. v. Interior Buildout & Turnkey
Constr., Inc., 21 S.W.3d 732, 742 (Tex. App.-Houston [14th Dist.] 2000, no pet.). 

 Testimony presented by Salinas's attorney addressed his qualifications to give
a legal opinion on the issue, the time spent, hourly rate, total amount, and
reasonableness of the fees incurred. That testimony was uncontested in any manner. 
We conclude it was legally and factually sufficient to support the trial court's award
of $6,930 in attorney fees.

 Accordingly, we overrule Guerrero's and Pena's third, fourth, fifth, sixth and
ninth issues on appeal.

VII. Conclusion

 We overrule Guerrero's and Pena's issues on appeal except with respect to the
sufficiency of the evidence to support the award of damages against Guerrero,
individually. We modify the judgment to reflect that award as $15,232.62 We
remand the award of pre-judgment interest to the trial court for recalculation. See
Royal Maccabees Life Ins. Co. v. James, 146 S.W.3d 340, 354 (Tex. App.-Dallas
2004, pet. denied). 

 ERRLINDA CASTILLO

 Justice


Memorandum Opinion delivered and 

filed this 10th day of August, 2006. 
1. Although Guerrero was able to secure some contracts, Salinas alleged that Guerrero never
provided them to him or produced all of them, so Salinas was unable to tender all contracts into
evidence. Salinas did testify as to four contracts. 
2. Guerrero's annual salary with G.A.S. exceeded the salary he earned while employed with the
City of McAllen. 
3. Salinas states that because Smart Factory's corporate charter was later forfeited, he sued
Guerrero and Pena, individually, as the corporation's sole shareholders. 
4. The supplemental answer, although included in the clerk's record, is not file-date-stamped by
the clerk. 
5. In their motion for directed verdict, Guerrero and Pena challenged the sufficiency of Salinas's
evidence, but did not raise the issue of special exceptions. In their motion for new trial and on appeal,
Guerrero and Pena contend the trial court erred in "denying" the special exceptions. Salinas states in
his brief that the special exceptions were denied because (1) they were untimely, being filed after the
deadline set forth in the docket control order, (2) leave of court was neither sought nor obtained, and
(3) there was no attempt by Guerrero and Pena to have them heard. The record does not contain the
docket control order, any hearing transcript, any trial court ruling, or any order denying the special
exceptions. Generally, a party challenging the pleadings must secure a hearing on the special exceptions
or the exceptions are waived. Atkins v. Tinning, 2001 Tex. App. LEXIS 3043, at *7 (Tex. App.-Corpus
Christi May 3, 2001, pet. denied) (designated as opinion); Brooks v. Housing Auth., 926 S.W.2d 316,
322 (Tex. App.-El Paso 1996, no writ); Smith v. Grace, 919 S.W.2d 673, 678 (Tex. App.-Dallas
1996, writ denied) (holding the movant has the burden to obtain a hearing to present its special
exceptions to the trial court and obtain a ruling). Where the record does not show the movant obtained
a ruling on the special exceptions, the movant has failed to preserve this complaint for appellate review. 
DART v. Edwards, 171 S.W.3d 584, 587 (Tex. App.-Dallas 2005, pet. denied) (citing Smith, 919
S.W.2d at 678). Here, however, because trial did proceed on the pleadings as filed, and because the
trial court's denial of the special exceptions is essentially acknowledged by all parties and supported by
the record, we infer that the trial court denied the special exceptions. See, e.g., In re The Lynd Co., No.
05-432, 2006 Tex. LEXIS 547, at *10 (Tex. June 9, 2006) (publication status pending) (finding ample
evidence to imply a finding from the fact of the trial court's order).
6. Guerrero and Pena similarly specially excepted to the damages questions, requesting that
Salinas identify the maximum amount of damages he sought
. While a party should designate the
maximum amount claimed as a whole, see Phillips v. Vinson Supply Co., 581 S.W.2d 789, 791 (Tex.
App.-Houston [14th Dist.] 1979, no writ), Guerrero and Pena do not contend error in that regard in this
appeal. Further, damage issues raised in this appeal are addressed in our analysis of factual and legal
sufficiency of the evidence.
7. Indeed, any findings made by the trial court are not to be included in the judgment. Salinas
v. Beaudrie, 960 S.W.2d 314, 317 (Tex. App.-Corpus Christi 1997, no pet.) (citing Valley Mech.
Contractors, Inc. v. Gonzales, 894 S.W.2d 832, 834 (Tex. App.-Corpus Christi 1995, no writ); R.S.
v. B.J.J., 883 S.W.2d 711, 720 (Tex. App.-Dallas 1994, no writ)); see Sutherland v. Cobern, 843
S.W.2d 127, 131 n.7 (Tex. App.-Texarkana 1992, writ dism'd w.o.j.) ("Findings of fact contained in
the body of a judgment may not be considered on appeal. . . . Therefore, for our purposes, we review
this case as one in which no findings of fact were made."). 
8. There is similarly no reference to past due findings of fact and conclusions of law in the motion
for new trial. 
9. Technically, the use of the term "directed verdict" in a bench trial is incorrect because there
is no jury to direct. In this situation, the correct procedure is for the defendant, at the close of the
plaintiff's evidence, to make a "motion for judgment." Grounds v. Tolar Indep. Sch. Dist., 856 S.W.2d
417, 422 n.4 (Tex.1993) (superseded by statute on other grounds) (citing McDaniel v. Carruth, 637
S.W.2d 498, 503 n.1 (Tex. App.-Corpus Christi 1984, no writ)). 
10. Salinas suggests that disposition of Guerrero's eighth issue also necessarily disposes of
Guerrero's third, fourth, fifth, and sixth issues on appeal. We disagree. 
11. The bank account was operated, with checks written and deposits and withdrawals made,
until it was closed in July 1999. 
12. Salinas testified the environmental certifications were of no use to the construction company,
and would only benefit the environmental services business. 
13. Salinas testified that the licenses and certifications were of no use to his construction
company, and that this expertise of Guerrero was sought specifically for the benefit of the environmental
services business. 
14. Salinas acknowledged that he did receive one check from the City in the amount of $1,250,
which he deposited into his corporation's account, and which he deducted from his claim for damages. 
Guerrero contended that the contract with the City was for his own benefit, and was put under the
name of the environmental services company solely to help build its resume. He also argued that, when
the City's checks were received at the environmental services business's post office address, they were
given to him by Salinas's accountant, so they were meant for him personally. Salinas stated he
"trusted" Guerrero and presumed the checks were put into the business account, but apparently that
did not occur. 
15. We conclude the evidence supports an award for $3,156.86 for Salinas's investment in
Guerrero's licenses and certifications, $3,924.26 for the costs of the survey equipment and the laptop
computer, and one-half of the value of the contract with the City of McAllen, or $9,401.50, less the
$1,250 already paid to Salinas. 
16. Additional testimony presented by Salinas included that of his bookkeeper and his attorney
(relating to attorney fees). 
17. Evidence also included other checks written by Salinas to Guerrero, personally, as
reimbursements for use of his personal line of credit. 
18. A corporation is an existing entity separate and distinct from its owners, its shareholders, but
only by virtue of the law and only in the contemplation of the law. Wright v. Ewens Chevrolet-Pontiac-Buick Co., 481 S.W.2d 447, 448-49 (Tex. App. Houston [14th Dist.] 1972,writ ref'd n.r.e.). The
sovereignty that enables the corporation's creation and gives it the capacity to sue and be sued may also
suspend or terminate that capacity. Id. Failure to timely report and pay franchise taxes authorizes the
Secretary of State of Texas to declare the corporate charter forfeit. Id. Such is the case here.