NUMBER 13-06-289-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


VIVIAN MEYERS, 
Appellant,


v.
 


GOLDEN PALMS RETIREMENT

& HEALTH CENTER, INC., 
Appellee.

 


On appeal from the 197th District Court 


of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Vela

Memorandum Opinion by Justice Vela


 This is an appeal from the dismissal of a medical malpractice case. Tex. Civ.
Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2006). The trial court dismissed
appellant's case after it determined that the expert reports did not satisfy the statutory
requirements. In three issues, appellant argues that the court improperly dismissed the
case based on unspecified deficiencies in the reports, failed to grant her an extension
of time to cure the deficiencies in the reports, and failed to make findings of fact and
conclusions of law. We affirm.

I.

BACKGROUND


 Appellant, Vivian Meyers, was transferred to Golden Palms Retirement and
Health Center in Harlingen ("Golden Palms"), appellee, to convalesce after undergoing
surgery to revise the prosthesis in her left hip. Meyers alleged that on February 14,
2004, a nurse assistant moved her from a wheel chair to her bed in contravention of
a directive in her Minimum Data Set ("MDS"), which required that two persons assist
in her transfer. (1) Meyers asserted that, during the lift, she heard and felt a crack in her
leg. Two days later, she was diagnosed with a fracture to her left femur that required
surgical repair. At the time of this incident Meyers was 73 years old. The MDS
identified Meyers as totally dependent on the staff for assistance and directed that at
least two persons assist in transferring her to and from her bed, chair and wheelchair. 
Meyers' initial plan of care listed her femur as very fragile. 

 Meyers sued Golden Palms on November 22, 2005. She alleged that as a result
of Golden Palms' negligence she suffered a fractured femur, was forced to undergo
surgery, and continues to suffer the residual effects of her injury. Meyers filed four
expert reports in an attempt to comply with Texas Civil Practice and Remedies Code
section 74.351. Golden Palms challenged the reports and moved to dismiss. After
a hearing, the trial court granted Golden Palms' motions. Before the trial court signed
its order, Meyers moved for a rehearing which included a request for an extension
pursuant to section 74.351 of the Texas Civil Practice and Remedies Code. The trial
court dismissed Meyers' claim with prejudice.

II.


THE LAW


 The expert report requirements in medical malpractice cases are well settled. 
The issue for the trial court is whether the report represents a good faith effort to
comply with the statutory definition. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48,
52 (Tex. 2002). To constitute a good faith effort, the report must provide enough
information to fulfill two purposes: (1) it must inform the defendant of the specific
conduct called into question, and (2) it must provide a basis for the trial court to
conclude that the claims have merit. American Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 879 (Tex. 2001). All information relevant to the inquiry is
contained within the document's four corners. Id. at 878. The report must include
an expert opinion on the standard of care, breach and causal relationship. Id. A report
cannot merely state the expert's conclusions about these elements. Id. Rather, the
expert must explain the basis of his or her statement to link those conclusions to the
facts. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d at 52. 

 It is necessary to have expert testimony regarding causation in a medical
malpractice case. Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex. 1965). Causation
is established by proof that the negligent act or omission was a substantial factor in
bringing about the harm and without which the harm would not have occurred. 
Kramer v. Lewisville Mem'l Hosp., 858 S.W.2d 397, 400 (Tex. 1993). Only a
physician qualified to render opinions on such causal relationship may testify as to
causation. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C) (Vernon Supp. 2006). 
Liability in a malpractice case may not turn upon speculation or conjecture. 
Hutchinson v. Montemayor, 144 S.W.3d 614, 618 (Tex.App.-San Antonio 2004, no
pet.).

III.


CAUSATION ANALYSIS


1. Standard of Review

 In resolving the issue of whether the trial court's decision that the report did not
meet the test set forth for initial expert reports, we follow an abuse of discretion
standard of review. Palacios, 46 S.W.3d at 878. Under this standard, we determine
whether the trial court acted arbitrarily or without reference to any guiding rules or
principles. Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003). We may not reverse
a trial court's discretionary ruling simply because we might have decided it differently.
Id. In other words, we review whether the trial court could have reasonably
determined that the report did not represent a good faith effort to summarize the
causal relationship between Golden Palms' alleged failure to meet the applicable
standard of care and the injury to Mrs. Meyers. 

 Discretion, at its most basic level, means choice. Trial court discretion is
important because it is impossible for appellate courts to monitor all trial court rulings
in a precise manner because the facts and circumstances are so varied. While there
has been some discussion about whether a more rigorous standard should be applied
to the trial court's determination in order to preserve the balance between the
elimination of frivolous lawsuits and a litigant's right to trial on the merits, to date, the
abuse of discretion standard remains in place. See George C. Hanks, Jr. & Rachel
Polinger-Hyman, Redefining the Battlefield: Expert Reports in Medical Malpractice
Litigation After HB 4, 67 Tex. B.J. 936, 943 (2004).

2. Report of Dr. J. Keith Rose

 We look first to the report of Dr. J. Keith Rose because his was the only report
to address causation. Dr. Rose's report outlines that he is an emergency room
physician who is familiar with the standard of care as it applies to the evaluation,
treatment, and rehabilitation of patients with hip replacements, knee replacements and
femur fractures in the elderly. He stated that he had cared for many patients in the
same or similar condition as Meyers. Dr. Rose defined the Minimum Data Sets as the
applicable standard of care for Golden Palms. He agreed with the assessment requiring
a minimum of a two-person assist to transfer appellant from bed, chair and wheelchair. 
Dr. Rose ultimately concluded that by "attempting to transfer Mrs. Meyers without the
assistance of two staff members, in contravention of the MDS directive, Golden
Palms' personnel clearly departed from the accepted standards of medical and health
care." With regard to causation, Dr. Rose stated, as follows:

 I further believe that the departure from accepted standards of medical
and health care proximately caused injury and damages to Mr. Meyers. 


 As a result of its failure to follow the MDS directive, Golden Palms
personnel fractured Mrs. Meyers' left femur. 


 Meyers argues that the report is sufficient regarding causation. She states that
Dr. Rose specifically linked his conclusions to the facts. Meyers claims that Dr. Rose
clearly explained how Golden Palms' conduct caused injury to Meyers. 

 Golden Palms argues that the report is insufficient on causation because the
report offers no explanation on how the transfer caused the fracture or how a two-person assist would have prevented the fracture. According to Golden Palms, the
report should also have negated other causes. The trial court agreed with Golden
Palms. 

3. Causation

 Numerous Texas cases have discussed and determined whether a report is a
good faith effort with regard to the expert's opinion on causation. The opinions
attempt to balance the substantive case law with the deferential standard afforded to
the trial court. In order for a report to be sufficient on causation, it must link the
healthcare provider's acts with an injury. See Jernigan v. Langley, 195 S.W. 3d 91,
94 (Tex. 2006). In Bowie v. Wright, the plaintiff argued that a single statement was
sufficient to establish causation: "if the x-rays would have been correctly read and the
appropriate medical personnel acted upon those findings then Wright would have had
the possibility of a better outcome." Bowie Mem'l Hosp. v. Wright, 79 S.W.3d at 51. 
The supreme court disagreed, holding that the report was insufficient because it did
not explain how the hospital's conduct caused the plaintiff's injury. Id. at 53. The
court ultimately concluded that there was no testimony linking the expert's conclusion
to the hospital's breach. Id. at 54.

 Although Bowie attempts to outline the standard for sufficiency of causation
testimony in an expert report, there are varied and even contrary results among the
courts of appeals, most likely stemming from an effort by appellate courts to balance
and preserve the sanctity of trial court discretion where possible.

 As an example, in Gray v. CHCA Bayshore L.P., the court noted:

 Although the report, at first glance, thus appears to articulate the three
statutorily required elements of an expert report, we are compelled, under
an abuse of discretion standard, to conclude that the trial court did not
act unreasonably in granting appellees' motion to dismiss.


Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 859 (Tex. App.Houston [1st Dist.]
2006, no pet.)

 The Gray court determined that conclusory statements plagued the efforts to
satisfy the causation element. Id. at 860. Ultimately, the court determined that by
not "fleshing out" how the failure to monitor caused the injuries, the report did not tie
the departure from the standard of care to the facts. Id.

 In Tovar v. Methodist Healthcare System, our sister court compared two of their
previous opinions in an effort to explain the requirements for a sufficient report with
regard to an expert's initial opinion on causation. Tovar v. Methodist Healthcare
System of San Antonio, LTD., L.L.P., 185 S.W.3d 65, 69 (Tex. App.-San Antonio
2005, pet. denied). Tovar involved a delay in diagnosis. The expert report outlined the
departures from the standard of care and stated with regard to causation:

 Had the appropriate diagnosis been made expeditiously in the afternoon
hours, when it should have been, instead of 2 a.m. in the morning, when
it was finally discovered, the hemorrhage would have been detected at
a much earlier stage with the possibility of only medical treatment
required as opposed to the desperate and unsuccessful surgery which
transpired at 3:45 a.m. Within reasonable medical probability, the
dramatic neurological deterioration and death of Ms. Rodriguez would
have been averted. The failure of the doctors and nursing personnel to
perform with appropriate medical and nursing standards unfortunately
caused this untoward result. 


Id. 


 The report in Tovar clearly set forth both required factors for proximate cause:
proof that the negligent act or omission was a substantial factor in bringing about the
harm and proof that without such negligent act or omission, the harm would not have
occurred. See Kramer, 858 S.W.2d at 400. The Tovar court suggested that a fair
summary, with regard to causation, is something less than all of the evidence
necessary to establish causation at trial, but must contain sufficiently specific
information on causation beyond mere conjecture. Tovar, 185 S.W.3d at 68.

 The Tovar court contrasted the report with two earlier cases where the San
Antonio court upheld the trial court discretion which deemed the initial reports
insufficient. In Lopez v. Montemayor, the expert report made the following statement
regarding causation:

 Additionally, it is the aspiration of the bridge section which caused and
precipitated the medical circumstances leading to the patient's demise. 

 

Lopez v. Montemayor, 131 S.W.3d 54, 60 (Tex. App-San Antonio 2004, pet. denied).


 The court held that the report was conclusory and was not a good faith effort
to comply with the statute's causation requirement because the statement did not
provide information linking the negligence to the death. Likewise in Costello v.
Christus Santa Rosa Health Care Corp., 141 S.W.3d 245, 249 (Tex. App.-San
Antonio 2004, no pet.), the court found the following report insufficient as to
causation: 

 If this patient would have been appropriately triaged and evaluated, then in all
reasonable medical probability she would have survived.


Id. 


 These reports were considered insufficient because they were conclusory. 
Neither discussed the two factors in Kramer.

 Finally, this court, in Salinas v. Gomez, No. 2006 WL 798934 (Tex.
App.-Corpus Christi 2006, pet. denied), (mem. op.) upheld the trial court's
discretionary ruling that a report was sufficient with respect to the causation element. 
The report in Salinas stated:

 The failure to monitor and timely refer allowed this patient's head to
continue to grow abnormally. The increase in head circumference was
a direct result of increased intra cranial pressure caused by progressive
hydrocephalus. The untreated increased intra cranial pressure directly
caused brain cell injury and death which proximately caused Isaiah
Gomez's permanent disability.

 

Id. at *6. 

 In this case, Dr. Rose opined that as a result of the failure to follow the MDS,
Golden Palms fractured Meyers' femur. The report does not state that the incident
would have been avoided had there been a two-person transfer. The expert did not
explain how the purported negligence caused the broken leg, nor does the report
mention that the broken leg would not have occurred had she been transferred by two
persons. The report does not flesh out how the failure to comply with the MDS
caused the injuries. Although we might have decided the issue differently, we cannot
say that the trial court acted contrary to guiding Texas law, particularly because the
case law affords discretion. 

4. Specificity of Objections

 Meyers also argues in her first issue that the case should be reversed because
Golden Palms' objections to the affidavit of Dr. Keith Rose were insufficient. The
primary objection was that the report was speculative. Golden Palms also incorporated
by reference all objections to the earlier filed reports. At the hearing on the motion to
dismiss, counsel for Golden Palms argued that none of the reports outlined what
should have been done and how, or in what way, the failure to follow the MDS caused
Mrs. Meyers' fracture. 

 While we do not believe that Golden Palms' objections to the report of Dr. Rose
were by any means model objections, the statute does not set forth the specificity
required for such objections. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon 

Supp. 2006). We also have found no cases outlining what is required for an objection
to be sufficient under the statute. Meyers cites Womco v. Navistar Intern. Corp., 84
S.W.3d 272, 281 n.6 (Tex. App.-Tyler 2002, no pet.), as authority for the proposition
that a vague objection does not offer the party an opportunity to remedy a defect.
Navistar concerns objections pursuant to Texas Rule of Civil Procedure 166a(f), which
requires that objections to defects in the form of affidavits be specific. Id. While we
agree that objections to initial expert reports should be more specific than those made
in this case, we find no language requiring it. Finding no abuse of discretion, we
overrule Meyers' first issue.

IV.


Failure to File Findings of Fact and Conclusions of Law 


 Meyers requested findings of fact and conclusions of law. However, Texas Civil
Practice and Remedies Code section 74.351 does not require findings to be made. 
Regardless, Meyers failed to preserve any error under Texas Rule of Civil Procedure
297. If the trial court fails to file findings and conclusions within twenty days of a
written request, the party making the request is required to file a "Notice of Past Due
Findings of Fact and Conclusions of Law" within thirty days of the original request. 
Tex. R. Civ. P. 297. Meyers filed no such notice. Therefore, error, if any, is waived. 
Salinas v. Beaudrie, 960 S.W.2d 314, 317 (Tex. App-Corpus Christi 1997, no pet.). 
We overrule Meyers' second issue.

V.


Failure to Grant an Extension


 Meyers also urges that the trial court erred in not granting her a thirty day
extension to file an adequate report. If the elements of a report are found deficient,
the trial court may grant one thirty day extension to cure any deficiency. Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp. 2006). The language in the
statute has been interpreted as discretionary rather than mandatory. Hardy v. Marsh,
170 S.W.3d 865, 870-71 (Tex. App.-Texarkana 2005, no pet.). When a trial court's
function is discretionary, we give deference to the trial court's decision and reverse
only upon a clear abuse of discretion. Id. at 871. 

 We do not know why the trial court did not grant Meyers' extension. It could
be because she did not ask for it until after the court announced its ruling. It is
conceivable that the trial court was not aware of the request because it was included
only as a part of her motion for rehearing and there is no evidence that the extension
was brought to the trial court's attention. In any event, we cannot say under the
circumstances that the trial court clearly abused its discretion. We overrule Meyers'
third issue.

VI.

Conclusion

 The trial court did not abuse its discretion in dismissing the case because Dr.
Rose's report was speculative and conclusory with regard to causation. The trial court
also properly utilized its discretion in refusing to grant an extension of time to cure the
report's deficiencies and in not filing findings of fact and conclusions of law. 

 The judgment of the trial court is affirmed. 


 



 

 ROSE VELA

 Justice 


Memorandum Opinion delivered and 

filed this 24th day of May, 2007.
1. An "MDS" assesses nursing home residents' functional capacity. See 42 U.S.C.A. § 1395i-3(b)(3)(A); 1395i - 3(f)(6)(A) (West Supp. 2006). We do not reach the issue of whether the MDS is
the proper standard of care, because the case is properly disposed of on causation.